[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 11-13439 & 12-13737
_____

D.C. Docket No. 1:10-cv-20098-JAL

DANIEL LUGO,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 24, 2014)

Before CARNES, Chief Judge, MARTIN and DUBINA, Circuit Judges.

CARNES, Chief Judge:

Daniel Lugo, a Florida death-row inmate, appeals the district court's

decision dismissing as time-barred his 28 U.S.C. § 2254 petition for a writ of

habeas corpus.  He also appeals the denial of his Federal Rule of Civil Procedure

60(b) motion, which asked the district court to vacate its judgment dismissing his § 2254 petition as time-barred.  Lugo contended in the district court, as he does here, that he is entitled to equitable tolling of the one-year statute of limitations for filing a federal habeas petition under Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549 (2010).  We granted Lugo separate certificates of appealability to appeal each of the district court's decisions and consolidated the two appeals.  We affirm in both appeals.

## I.  BACKGROUND

Lugo was sentenced to death after he was convicted by a jury of thirty-nine felonies, including kidnapping, attempted extortion, and first-degree murder.  See Lugo v. State (Lugo I), 845 So. 2d 74, 84–92 (Fla. 2003).[1]  The facts of the crime, trial, and sentencing proceedings are detailed at length in the Florida Supreme Court's opinion affirming Lugo's convictions and death sentences on direct appeal. See id. at 84–119.

---

[1] In total, Lugo was convicted on all of the thirty-nine counts charged against him, which were:

> [F]irst-degree murder (two counts), conspiracy to commit racketeering, racketeering, kidnaping (two counts), armed kidnaping, attempted extortion, grand theft (three counts), attempted first-degree murder, armed robbery, burglary of a dwelling, first degree arson, armed extortion, money laundering (nine counts), forgery (six counts), uttering a forged instrument (six counts), possession of a removed identification plate, and conspiracy to commit a first degree felony.

Lugo I, 845 So. 2d at 91 n.30.

2

The Florida Supreme Court affirmed Lugo's convictions and death sentences on direct appeal on February 20, 2003, and denied rehearing on May 2, 2003. Id. at 74, 119. The judgment became final when the United States Supreme Court denied Lugo's petition for a writ of certiorari on October 6, 2003. Lugo v. Florida, 540 U.S. 920, 124 S.Ct. 320 (2003); see also Clay v. United States, 537 U.S. 522, 527, 123 S.Ct. 1072, 1076 (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."); Bond v. Moore, 309 F.3d 770, 772–73 (11th Cir. 2002). Lugo had until October 6, 2004, to file his federal petition for a writ of habeas corpus or to properly file an application for postconviction relief in state court to toll the time for filing his federal petition. See 28 U.S.C. § 2244(d)(1)(A), (d)(2); Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (noting that "the limitations period expires on the anniversary of the date it began to run").

Over the course of the collateral review process, and at various times, Lugo had five different appointed counsel.

### A. CCRC-Southern Region

On May 2, 2003, the Florida Supreme Court appointed Florida's Office of Capital Collateral Regional Counsel (CCRC)-Southern Region to handle Lugo's

3

postconviction proceedings.[2]  See Fla. Stat. § 27.7001, et seq. (creating and structuring Florida's system for providing representation to indigent capital defendants in collateral proceedings).  However, CCRC-Southern Region withdrew from its representation before Lugo's judgment even became final on direct review because it was representing his codefendant.

## B.  CCRC-Middle Region

On June 9, 2003, CCRC-Middle Region entered a notice of appearance in state postconviction court, replacing the Southern Region office as counsel for Lugo.  Almost four months later, and three days before Lugo's convictions became final on direct review, CCRC-Middle Region filed a motion to withdraw based on a conflict of interest.  That October 3, 2003 motion stated that the CCRC-Middle Region's lead investigator had a personal conflict of interest because she feared

---

[2] Under Florida Rule of Criminal Procedure 3.851(b)(1), the Florida Supreme Court, upon issuance of its mandate affirming a sentence of death, issues "an order appointing the appropriate office of the Capital Collateral Regional Counsel or directing the trial court to immediately appoint counsel from the Registry of Attorneys maintained by the Justice Administrative Commission."  Since 1997, there have been three CCRC regional offices — Northern, Middle and Southern.  See Am. Bar Ass'n, Evaluating Fairness and Accuracy in State Death Penalty Systems: The Florida Death Penalty Assessment Report 235 (2006) (2006 ABA Report), available at http://www.americanbar.org/groups/individual_rights/projects/death_ penalty_due_process_review_project/death_penalty_assessments/florida.html; see also Fla. Stat. § 27.701.  Each CCRC office is responsible for representing persons convicted and sentenced to death by state courts, within their respective regions, in collateral proceedings in state and federal court.  See Fla. Stat. § 27.702(1)–(2).  On July 1, 2003, however, CCRC-Northern was closed by the Florida legislature as part of a pilot program, and its responsibilities were transferred to a panel of registry attorneys, compiled and maintained by the Florida Commission on Capital Cases.  Am. Bar Ass'n, supra, at 235.  More recently, the Florida legislature enacted the Timely Justice Act of 2013, effective July 1, 2013, which, among other things, reopened the CCRC-Northern office.  See 2013 Fla. Sess. Law Serv. Ch. 2013–216 (West) (codified in scattered sections of the Fla. Code).

4

that conducting an investigation in Lugo's case could endanger members of her family in Colombia.  For that reason, and pursuant to Fla. Stat. § 27.703(1), CCRC-Middle Region asked to be permitted to withdraw and for the court to appoint in its place conflict-free registry counsel qualified under Fla. Stat. §§ 27.710 and 27.711.

On October 22, 2003, the state postconviction court denied CCRC-Middle Region's motion to withdraw.  But later, on December 18, 2003, at a court proceeding where Lugo was not present, that court allowed CCRC-Middle Region to withdraw.[3]  Although the record of that proceeding indicates that CCRC-Middle Region's investigator met with Lugo at least twice and that the agency began collecting records about his case, there is nothing else in it about the extent of CCRC-Middle Region's efforts on Lugo's behalf before it withdrew.

## C.  Roy D. Wasson

The state court appointed registry attorney Roy D. Wasson on January 16, 2004.  Wasson did not file a state postconviction motion on Lugo's behalf under Rule 3.851 of the Florida Rules of Criminal Procedure until October 18, 2004.

---

[3] Lugo argued in the district court that he was not given timely notice of CCRC-Middle Region's motion to withdraw and was not present at the proceedings removing CCRC-Middle Region as counsel.  He does acknowledge that CCRC-Middle Region advised him that a conflict existed related to the investigation.  Lugo says that had he been timely served with notice of CCRC-Middle Region's motion to withdraw, he would have objected and waived any alleged conflict.

5

There is more to say about Wasson's conduct, as well as Lugo's diligence, between the time of Wasson's appointment and his filing of Lugo's Rule 3.851 motion.  While these facts are relevant to an equitable tolling analysis, many of them were not before the district court when it initially dismissed Lugo's § 2254 petition.  Sorting out when Lugo brought facts to the district court's attention is important in our review of the two different district court orders, each with its own analytical framework and standard of review.[4]  At the time it dismissed the § 2254 petition, the district court had before it only the procedural history of the case and some conclusory allegations by Lugo concerning Wasson.  It was not until after that dismissal and when the Rule 60(b) motion was filed that the most egregious facts regarding Lugo's representation were presented to the district court.  Because we consider each appeal in light of what was before the district court when it issued the relevant decision, we limit our background discussion here to those facts which were brought to the district court's attention by Lugo or the State before the court dismissed the § 2254 petition.

The Rule 3.851 motion filed by Wasson raised various substantive claims on Lugo's behalf and alleged that he was not competent to participate in postconviction proceedings.  After Lugo was evaluated and determined to be

---

[4] The district court's decision on equitable tolling is reviewed de novo, San Martin v. McNeil, 633 F.3d 1257, 1265 (11th Cir. 2011), but its decision denying the Rule 60(b) motion is reviewed only for an abuse of discretion, Howell v. Sec'y, Fla. Dep't of Corr., 730 F.3d 1257, 1260 (11th Cir. 2013).

6

competent by two state doctors, Lugo filed pro se motions objecting to a

competency hearing and requesting the removal of Wasson as counsel.  The parties

later stipulated that Lugo was competent to proceed and he withdrew his motion to

discharge Wasson.

After holding an evidentiary hearing in 2006, the state postconviction court

denied Lugo's Rule 3.851 motion.  On behalf of Lugo, Wasson appealed that

denial to the Florida Supreme Court but did not file a state habeas petition in that

court because he did not find any meritorious issues to raise.[5]  Lugo attempted to

file a pro se amended notice of appeal and state habeas petition.  He also filed a

motion to remove Wasson as counsel as well as a supplement to that motion.  On

February 1, 2008, the Florida Supreme Court denied Lugo's motion to remove

Wasson as counsel and struck all of Lugo's pro se pleadings as unauthorized.

On October 8, 2008, the Florida Supreme Court affirmed the denial of

postconviction relief.  Lugo v. State (Lugo II), 2 So. 3d 1, 21 (Fla. 2008).  Fourteen

days later Lugo filed pro se motions for rehearing and to hold the rehearing in

abeyance pending resolution of bar complaints he had filed against both Wasson

---

[5] Under Florida law, a capital habeas petitioner may file a petition for a writ of habeas corpus in the Florida Supreme Court, but such a petition must be filed at the same time as the initial brief is filed in an appeal of a state circuit court's order on a Rule 3.851 motion.  See Fla. R. Crim. P. 3.851(d)(3).  In Florida, a state habeas petition is the proper procedural vehicle for bringing claims of ineffective assistance of appellate counsel, for example, but not for raising claims that should have been brought on direct appeal or in a postconviction motion.  See Rutherford v. Moore, 774 So. 2d 637, 643 (Fla. 2000).

7

and the United States Attorney for the Southern District of Florida. The Florida Supreme Court denied Lugo's abeyance motion on November 4, 2008.

On November 10, 2008, Wasson moved to withdraw from his obligation to represent Lugo in state and federal postconviction proceedings pursuant to Fla. Stat. § 27.711. In support of that motion, Wasson stated that he had previously advised Lugo that he was "unwilling" to represent him beyond challenging the denial of postconviction relief in state court, and so the Florida Supreme Court's affirmance of the trial court's denial of the Rule 3.851 motion marked the completion of "all of the work that [he was] willing and able to do on behalf of [Lugo]." Beyond that, Wasson alleged that an actual conflict of interest between himself and Lugo existed because Lugo had filed a bar grievance against him accusing him of misconduct. The State opposed Wasson's motion to withdraw and argued that under Fla. Stat. § 27.711 Wasson's appointment required him to represent Lugo "throughout all postconviction capital collateral proceedings, including federal habeas corpus proceedings until the capital defendant's sentence is reversed, reduced, or carried out, and the attorney is permitted to withdraw from such representation by a court of competent jurisdiction." See Fla. Stat. § 27.711(2), (8). On January 22, 2009, the Florida Supreme Court denied Wasson's motion to withdraw and denied Lugo's pro se motion for rehearing.

8

The Florida Supreme Court issued its mandate on February 10, 2009. The issuance of the mandate ended any statutory tolling period. See Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000) (per curiam) (holding that a state postconviction motion remains pending until the mandate issues in the appeal).

On March 9, 2009, in the Florida Supreme Court, Wasson renewed his motion to withdraw, stating that no federal habeas petition had been filed because the relationship between Lugo and Wasson was "so bad" that Lugo refused to cooperate. Wasson re-alleged the existence of an actual conflict based on Lugo's pending bar grievance against him. The Florida Supreme Court denied Wasson's renewed motion to withdraw on April 17, 2009.

On June 20, 2009, Lugo filed a pro se petition for a writ of certiorari in the United States Supreme Court seeking review of the Florida Supreme Court's denial of his motion for postconviction relief. On October 5, 2009, the Supreme Court denied that petition. Lugo v. Florida, 558 U.S. 867, 130 S.Ct. 182 (2009).

On January 5, 2010, Lugo filed a pro se § 2254 petition in the United States District Court for the Southern District of Florida, raising four grounds for relief. He also filed an appendix in support of his petition and a motion to hold the proceedings in abeyance. The petition asserted it was timely filed because it was filed within one year of February 10, 2009, the date the Florida Supreme Court's mandate had issued in the decision affirming the denial of postconviction relief.

9

Lugo's abeyance motion specifically relied on Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, as one of the reasons his petition should be held in abeyance. It argued:

> [T]he U.S. Supreme Court's certiorari review of Holland v. State of Florida is likely to impact this case as to the failure of postconviction counsel to present issues and make filings within the time periods provided by law so as to preserve a capital defendant's right to federal review of habeas corpus claims. There is a high likelihood that Mr. Lugo must have a viable federal petition pending to avail himself of any benefit from Holland.

The matter was referred to a magistrate judge who issued an order on January 19, 2010, informing Lugo that his "petition may be barred from consideration" unless he demonstrated that it was filed within one year from one of the four triggering events identified in 28 U.S.C. § 2244(d)(1). On the same date, the magistrate judge issued an order for the State to show cause why the petition should not be granted, specifically directing the State to address, among other things, "the issue of whether the limitations period established by 28 U.S.C. § 2244(d) has expired."

Lugo's pro se response to the magistrate judge's order argued that his petition was timely filed for the reason he gave in his § 2254 petition, namely, that it was filed within one year of the issuance of the Florida Supreme Court's mandate in Lugo II. Alternatively, Lugo asserted that "'U.S.-State impediments' prevent[ed] [him] from timely filing a federal habeas corpus petition," justifying consideration of his petition in light of § 2244(d)(1)(B). As an example of "U.S.-

10

State impediments," Lugo's response identified, without meaningful explanation, "Federalized Anarchy in, so near, and thereafter Mr. Lugo's direct appeal."

On March 5, 2010, the State filed a 78-page response to the order to show cause which included a detailed procedural history of the case.[6] The State's response contained several arguments why Lugo's petition should be dismissed, including that it was time-barred by the statute of limitations. Specifically, the State argued that because Lugo did not file his Rule 3.851 motion until October 18, 2004, after the one-year statute of limitations had already expired, his state postconviction proceedings did not toll the federal statute of limitations. Asserting that more than one year of untolled time had passed before Lugo filed his § 2254 petition, the State argued that Lugo's petition be dismissed. The State countered Lugo's argument that he had one year from February 10, 2009 — the date the Florida Supreme Court issued its mandate in Lugo II — by pointing out the United States Supreme Court's holding that the judgment mentioned in 28 U.S.C. § 2244(d)(1)(A) refers to a state court conviction and sentence. See Burton v. Stewart, 549 U.S. 147, 156–57, 127 S.Ct. 793, 798–99 (2007).

Lugo, again acting pro se, filed a reply on April 5, 2010, to the State's response to the order to show cause. In a section labeled "Statute of Limitations,"

_____

[6] On March 8, 2010, the State filed a notice of conventional filing of the state court record, which consisted of 167 volumes of state court records and pleadings. The State also filed the record electronically in 474 separate appendices.

11

Lugo requested an evidentiary hearing to prove "U.S.-State impediments" justifying consideration of his petition despite the filing delay. Lugo also alleged that Wasson had retaliated against him for failing to give Wasson large sums of money. The retaliation, according to Lugo, consisted of alleged perjury and fraud in the reasons Wasson gave for not filing a state habeas petition on Lugo's behalf.

## D. Jeffrey E. Felier

After the pleadings were filed, the magistrate judge denied Lugo's abeyance motion and sua sponte appointed attorney Jeffrey E. Felier to represent Lugo on April 20, 2010.[7] The order appointing Felier specifically directed him to file a status report addressing, among other things, "[w]hether this Petition is barred by the statute of limitations." Felier filed a status report on June 16, 2010, but it did not address the statute of limitations issue. On December 20, 2010, Felier filed an amended § 2254 petition. Citing Holland, the petition itself alleged that "professional negligence and egregious conduct by Court-Appointed Registry Counsel, Roy D. Wasson supports the need for equitable intervention by this Court." Specifically, the amended petition said that Wasson "failed to present and argue mutually agreed upon causes during the course of his representation of [Lugo]." The amended petition also alleged in a conclusory fashion that Lugo was

---

[7] Wasson never filed a notice of appearance or any pleadings in federal court on Lugo's behalf, despite his statutory, contractual, and ethical obligations to continue his representation into federal court. We were advised during oral argument that the Florida Supreme Court has yet to allow Wasson to withdraw from representing Lugo.

12

entitled to equitable tolling because he was acting diligently and extraordinary circumstances prevented him from filing his petition on time.  See Holland, 560 U.S. at 649, 130 S.Ct. at 2562.

After further briefing and without an evidentiary hearing, the district court dismissed the amended petition as untimely.

### E.  Orlando do Campo

On July 27, 2011, Felier filed a timely notice of appeal from the dismissal of the amended federal habeas petition and a motion for the district court to appoint counsel for the appeal.[8]  The court appointed attorney Orlando do Campo to represent Lugo and terminated Felier's representation.  On February 3, 2012, attorney do Campo filed a Rule 60(b) motion.  The Rule 60(b) motion and its supporting documents brought to the district court's attention, for the first time, specific and detailed information about Wasson's conduct and Lugo's troubled relationship with him.  After briefing and without an evidentiary hearing, the district court denied the Rule 60(b) motion on June 12, 2012.

---

[8] On August 8, 2011, Lugo filed a pro se motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), which the district court denied as untimely.  We do not review the district court's denial of the Rule 59(e) motion because it is beyond the scope of the COA in this case.  See Murray v. United States, 145 F.3d 1249, 1250–51 (11th Cir. 1998) (per curiam) (explaining that our appellate review is limited to the issues specified in the COA).

## II.  STANDARDS OF REVIEW

### A.  Dismissal of the § 2254 Petition

We review de novo a district court's decision to dismiss a § 2254 petition

and its decision to deny equitable tolling.  San Martin, 633 F.3d at 1265.  But we

review the district court's determination of the relevant facts, such as the

petitioner's diligence, only for clear error.  Id.  "Under this standard, we must

affirm a district court's findings of fact unless the record lacks substantial evidence

to support them."  Id. (quotation marks omitted).  We review the denial of an

evidentiary hearing on equitable tolling only for an abuse of discretion.  Chavez v.

Sec'y  Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011).  Thus, if we

agree with the district court that the facts alleged in the habeas petition and other

pleadings properly before the court are not enough to make Lugo's petition timely

under 28 U.S.C. § 2244(d), "then it was not an abuse of discretion for the district

court to deny him an evidentiary hearing, and the court did not err by dismissing

his petition."  Id.

### B.  Denial of the Rule 60(b) Motion

We review the denial of a Rule 60(b) motion only for an abuse of discretion.

See Howell, 730 F.3d at 1260.  Under this standard, we affirm unless we determine

that the district court applied an incorrect legal standard, failed to follow proper

procedures in making the relevant determination, or made findings of fact that are

14

clearly erroneous.  Mincey v. Head, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000).  A

district court's decision to grant or deny an evidentiary hearing in a Rule 60(b)

proceeding is also reviewed only for an abuse of discretion.  See Cano v. Baker,

435 F.3d 1337, 1342 (11th Cir. 2006) (per curiam); see also Schriro v. Landrigan,

550 U.S. 465, 473–75, 127 S.Ct. 1933, 1939–40 (2007).

### III.  DISCUSSION

#### A.  Dismissal of the Petition as Untimely

AEDPA imposes a one-year statute of limitations on the filing of § 2254

petitions.  28 U.S.C. § 2244(d)(1).  The limitations period begins to run from the

latest of four different events, only one of which is relevant to Lugo's case:  "the

date on which the judgment became final by the conclusion of direct review or the

expiration of the time for seeking such review."  Id. § 2244(d)(1)(A).[9]

AEDPA's one-year limitations period is subject to statutory tolling for "[t]he

time during which a properly filed application for State post-conviction or other

---

[9] We recognize that Lugo's pleadings in the district court alleged that "U.S.-State impediments prevent[ed] Lugo from timely filing a federal habeas corpus petition."  If proven, an allegation like that could provide a different triggering date for the application of AEDPA's one-year deadline.  See 28 U.S.C. § 2244(d)(1)(B) (providing an alternative limitations trigger running from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action").  Lugo never developed the factual or legal basis for this ground in the district court.  We also consider the issue abandoned because he did not argue it in his brief to this Court.  See Isaacs v. Head, 300 F.3d 1232, 1238 (11th Cir. 2002); Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir. 1995).  In any event, controlling precedent forecloses Lugo's position.  See Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005), aff'd, 549 U.S. 327, 127 S.Ct. 1079 (2007) (holding that providing an incompetent postconviction attorney "is not the type of State impediment envisioned by § 2244(d)(1)(B)").

collateral review with respect to the pertinent judgment or claim is pending." Id. § 2244(d)(2). Because AEDPA's limitations period is not jurisdictional, it "is subject to equitable tolling in appropriate cases." Holland, 560 U.S. at 645, 130 S.Ct. at 2560. A habeas petitioner "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649, 130 S.Ct. at 2562 (quotation marks omitted). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." Id. at 653, 130 S.Ct. at 2565 (internal citation and quotation marks omitted).

The district court correctly determined that the state court judgment became final when the Supreme Court denied Lugo's petition for a writ of certiorari on October 6, 2003. See Bond, 309 F.3d at 772–73. Lugo had until October 6, 2004, to file his § 2254 petition, absent statutory or equitable tolling. See Downs, 520 F.3d at 1318.

After "reviewing the arguments put forth in [Lugo's] Reply and after considering all the pleadings and applicable law," the district court concluded that it had "no alternative but to find the petition time barred." As the district court correctly noted, "[t]he statutory tolling provision does not encompass a period of time in which a state prisoner does not have a 'properly filed' post-conviction application actually pending in state court." Moore v. Crosby, 321 F.3d 1377,

16

1381 (11th Cir. 2003). Lugo's Rule 3.851 motion was not "actually pending" in state court until October 18, 2004 — twelve days after the one-year limitations period expired. The filing of Lugo's Rule 3.851 motion did not operate to toll the limitations period under § 2244(d)(2) because no period remained to be tolled. See Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001).

Nor was Lugo entitled to equitable tolling. When the district court initially dismissed the federal habeas petition as time-barred on July 13, 2011, it expressly considered Lugo's counseled reply to the State's arguments that the petition was untimely. The court explained why Lugo had not shown the existence of extraordinary circumstances that prevented him from timely filing his § 2254 petition:

> Mr. Lugo does not show a causal connection between the alleged extraordinary circumstances and the late filing of the petition. Indeed, the closest he ever comes to even making this argument is when he argues that "equitable intervention is warranted as a result of the professional negligence and egregious conduct of Court-Appointed Registry Counsel, Roy D. Wasson, with regard to his failure to raise an agreed upon good cause of United States and State of Florida collusion so as to alerted [sic] the Court that the misconduct of the Government and State Attorneys hindered his ability to timely recognize and raise all viable and fundamental errors in his Original Motion for Post-Conviction Relief under Florida Rule of Criminal Procedure 3.851 before the expiration of the one year time limit." ([D.E. 59] at 16).

> Mr. Lugo has not shown how "some extraordinary circumstance stood in his way and prevented timely filing." Holland, 130 S. Ct. at 2562 (internal quotation marks omitted). Most importantly, Mr. Lugo has not begun to explain how the "Federalized

17

Anarchy" or his counsel's failure to raise "an agreed upon good cause" ultimately caused the late filing of his federal habeas petition. Mr. Lugo also fails to explain why he did not have ample time to perfect the filing of his state post-conviction motion, leaving himself no time to ultimately file his federal petition[,] [n]or has he given any coherent explanation for his delay in filing in state court. Based on his assertions, it would appear that Mr. Lugo's argument should have been made as one of an impediment by State action pursuant to 28 U.S.C. §2244(d)(1)(B). However, the Court finds that any claim of State impediment is similarly vacant.

. . . .

. . . Assuming that the Court found that such an impediment existed, Mr. Lugo has offered no cogent explanation as to how the "Federalized Anarchy" impeded his ability to timely file his petition.

The district court also quoted Lugo's pro se definition of "Federalized Anarchy":

Federalized Anarchy: this refers to the United States and State continuing anarchy of U.S.-State Collusion and its incorporation of Brady Evidence of June 22, 1995 from state criminal trial and into and thru actions taken by the United States and State thereafter termination of criminal proceedings of motion for new trial on January 11, 1999. As these actions involved federal courts of 99-0418, 99-2419, and 99-1638, it federalized the collective anarchy of U.S.-State Collusion; . . .

We agree with the district court's assessment that this definition "does not assist the Court in understanding why Lugo failed to timely file his federal petition, nor does it explain why Lugo would be entitled to equitable tolling."

The district court correctly concluded that Lugo failed to establish "that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649, 130 S. Ct. at 2562 (quotation marks omitted). It is well

18

settled that "[t]he burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner." San Martin, 633 F.3d at 1268. A petitioner "must plead or proffer enough facts that, if true, would justify an evidentiary hearing on the issue." Hutchinson v. Florida, 677 F.3d 1097, 1099 (11th Cir. 2012). "And the allegations supporting equitable tolling must be specific and not conclusory." Id. In light of the petitioner's burden, district courts are not "required to mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface." Chavez, 647 F.3d at 1061. That is especially true in a case, like this one, with a massive record.

Nearly all of Lugo's allegations and arguments in the district court that extraordinary circumstances existed were conclusory, tangential, irrelevant, or some combination of the three. It is not enough for a habeas petitioner, who had the benefit of appointed counsel in federal court, to allege in general and conclusory terms that the appointed lawyers who represented him in earlier proceedings acted negligently or engaged in misconduct. And vague allegations about the existence of impediments, without more, or an argument that fails to explain how such impediments prevented the timely filing of the petition, does not establish extraordinary circumstances. Nor are they sufficient to warrant an evidentiary hearing. Id. at 1060. On this record, we cannot say the district court erred in concluding that Lugo failed to establish extraordinary circumstances

19

sufficient to support equitable tolling, or that the court abused its discretion in not granting him an evidentiary hearing.

Even if we concluded that Lugo had shown extraordinary circumstances that prevented him from filing his petition on time, we must defer to the district court's finding of fact that Lugo did not act with due diligence in pursuing his rights, unless it is clearly erroneous. See San Martin, 633 F.3d at 1265. The district court found that Lugo had failed to articulate how he acted with diligence, and instead had simply cited to "several of the documents attached in the Appendix. (See Appendix C-R, dd-kk)." After reviewing the appendix items cited by Lugo, the court "found that all of the documents purporting to show diligence that could entitle Mr. Lugo to equitable tolling of the statute of limitations were filed well after the statute of limitations had already expired and were not documents regarding a federal habeas petition or the filing thereof."

We have independently reviewed the documents Lugo cited to the district court. With the exception of an email dated October 31, 1996 (which does not remotely have anything to do with Lugo's diligence or lack of it), all of the documents he cited appear to involve matters from various state and federal court proceedings that were filed after the one-year limitations period expired on October 6, 2004. They are not probative of Lugo's diligence during the relevant time period before the limitations period expired. Thus, we cannot say the district

20

court's finding with respect to diligence "lacks substantial evidence to support

[it]." Id. (quotation marks omitted).  It is not clearly erroneous.[10]

### B.  Denial of the Rule 60(b) Motion

Rule 60(b)(6), the catchall provision of Rule 60(b), authorizes relief for "any

other reason that justifies relief" from the operation of a judgment.  Fed. R. Civ. P.

60(b)(6).  In Gonzalez v. Crosby, the Supreme Court recognized that "Rule 60(b)

has an unquestionably valid role to play in habeas cases."  545 U.S. 524, 534, 125

S.Ct. 2641, 2649 (2005).  Where a Rule 60(b) motion challenges only a district

court's prior ruling that a habeas petition was time-barred, it "is not the equivalent

of a successive habeas petition."  Id. at 535–36, 125 S.Ct. at 2650.  However, "a

movant seeking relief under Rule 60(b)(6) [must] show extraordinary

circumstances justifying the reopening of a final judgment."  Id. at 535, 125 S.Ct.

at 2649 (quotation marks omitted); see also Cano, 435 F.3d at 1342.  And "[s]uch

circumstances will rarely occur in the habeas context."  Gonzalez, 545 U.S. at 535,

125 S.Ct. at 2649.  Even where the Rule 60(b) motion demonstrates sufficiently

extraordinary circumstances, "whether to grant the requested relief is . . . a matter

---

[10] In Cadet v. Florida Department of Corrections, 742 F.3d 473, 481 (11th Cir. 2014), which was decided during the pendency of this appeal, we held that the proper standard for gauging whether attorney misconduct qualifies as an extraordinary circumstance for equitable tolling purposes is whether it amounts to abandonment of the attorney-client relationship, not whether it is negligence or even gross negligence.  Because Lugo has failed to demonstrate due diligence in pursuing his rights or a causal connection between counsel's alleged misconduct and the untimely filing of his § 2254 petition, we need not address Cadet's application to this case or decide whether counsel's alleged errors rose to the level of abandonment.

21

for the district court's sound discretion." Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1317 (11th Cir. 2000) (quotation marks and alteration omitted).

As a threshold matter, the district court indicated that to satisfy Rule 60(b)'s extraordinary circumstances requirement, Lugo would have to satisfy the criteria for granting a Rule 60(b) motion and demonstrate that he is entitled to equitable tolling under Holland.[11]  In doing so, the court took into consideration specific facts and legal arguments based on those facts put forward by do Campo, the attorney who had been appointed to represent Lugo after the district court dismissed the habeas petition.  Some of those facts were already in the voluminous record before the district court at the time it dismissed the federal petition.  Others were not.  For example, there was certain correspondence between Lugo and Wasson before and after the expiration of Lugo's statute of limitations on October 6, 2013, that had not been before the court when it dismissed the petition.

Lugo's Rule 60(b) motion and supporting documentation led the district court to find that Wasson's conduct was "nothing short of egregious," "beyond the

---

[11] For the purposes of this appeal, we assume, without deciding, that Lugo's Rule 60(b) motion was a true 60(b) motion within the meaning of Gonzalez — that is to say, it attacked "not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings."  545 U.S. at 532 & n.4, 125 S.Ct. at 2648 & n.4 (explaining that a habeas petitioner who "asserts that a previous ruling which precluded a merits determination was in error — for example, a denial for such reasons as . . . [a] statute-of-limitations bar" is not "making a habeas claim").  But see id. at 532 n.5, 125 S.Ct. at 2648 n.5 ("We note that an attack based on the movant's own conduct, or his habeas counsel's omissions, ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably.") (internal citation omitted).

22

pale," "exceptional," "extraordinary," and "serious and disturbing." The court

summarized Wasson's conduct, as alleged by Lugo, as follows:

> It appears that while Mr. Wasson was representing Mr. Lugo, pursuant to a court-appointment, Mr. Wasson also prepared and executed a Trust Agreement wherein Mr. Lugo would deposit $1.5 million into an interest bearing account for the benefit of his children. Mr. Wasson was designated as the trustee. For his services as trustee, Mr. Wasson was to be paid a $100,000 administration fee and he was to be reimbursed for "reasonable out-of-pocket expenses incurred in carrying out the purposes of this Trust." Further, also during his court appointment, Mr. Wasson drafted and executed a Conditional Retainer Agreement with Mr. Lugo. Under the terms of the Agreement, Mr. Wasson acknowledged that he was "legally and ethically prohibited from seeking or accepting additional compensation for services performed in that 3.851 proceeding" but that Mr. Lugo "wishes to retain the Attorney now to represent him in the future in other matters." For Mr. Wasson's future services, he was to be compensated by either: 1) a lump sum payment in the amount of $500,000 or 2) by an interest-free signature loan in the principal amount of $1 million to a corporate entity designated by the Attorney.

> Over the years that follow, it becomes obvious that Mr. Lugo may not have made good on his promises to Mr. Wasson. Mr. Wasson's subsequent letters remind Mr. Lugo that he remains able to reliably perform trustee duties and inquires where things stand "regarding helping [Lugo's] children." Despite non-compliance with the Trust Agreement and Conditional Retainer Agreement, Mr. Wasson, still court-appointed counsel, approached Mr. Lugo with certain new "investment opportunities." In particular, Mr. Wasson suggested that Mr. Lugo should invest $100,000 in a company owned and operated by Mr. Wasson. Mr. Wasson provided Mr. Lugo with the Articles of Incorporation and instructed him that payment should not be delayed by such minor issues like the proper payee because Mr. Lugo could just send the check made to Mr. Wasson's trust account at Wasson & Associates.

> By September 7, 2006, the relationship seems to have soured. On that day, Mr. Wasson wrote Mr. Lugo a letter advising him that "I

23

could begin to prepare now for the briefing and argument of these issues which require a new case filing at the federal level. Unfortunately, given my work load in other matters (including matters pertaining to the well being of your children), I am unable to spend all the time I would like to on your case because of lack of compensation provided to me for such services."

Doc. 101 at 8–10 (internal citations omitted). Despite finding that Wasson's conduct was "certainly exceptional," "extraordinary," and "beyond the pale," the district court concluded that "it did not change the result here" because all of that conduct "occurred during the time period in which the AEDPA statute of limitations was already tolled," between October 6, 2004, and February 10, 2010.

In reaching its conclusion on equitable tolling, the district court considered three distinct periods of legal representation of Lugo: (1) October 6, 2003, to January 15, 2004 (representation by CCRC-Middle Region);[12] (2) January 16, 2004, to October 18, 2004 (representation by Wasson pre-Rule 3.851 filing); and (3) February 10, 2009, to January 5, 2010 (representation by Wasson after issuance of the Florida Supreme Court's mandate). The only period for which the court

---

[12] We note that the district court's order indicated that Lugo was represented by CCRC-Southern Region on October 6, 2003, and that CCRC-Middle Region was appointed to represent Lugo after CCRC-Southern Region moved to withdraw because of a conflict. While it is true that CCRC-Middle Region was appointed to represent Lugo after CCRC-Southern Region withdrew, our review of the record indicates that CCRC-Middle Region filed its notice of appearance in state court on June 9, 2003. In other words, CCRC-Middle Region represented Lugo on October 6, 2003, not CCRC-Southern Region. In any event, this discrepancy is not material and does not otherwise undermine the district court's finding that "Mr. Lugo has not established diligence or an extraordinary circumstance during his representation by CCRC."

24

found Lugo had demonstrated both extraordinary circumstances and diligence was October 6 to 18, 2004.

The district court justified equitable tolling during that twelve-day period on two facts:  (1) Lugo had written Wasson several times about his AEDPA one-year deadline expiring on October 6, 2004, asking him to file his Rule 3.851 motion no later than that date; and (2) on October 6, 2004, Wasson filed a motion for clarification of hurricane tolling orders and a motion for a ten-day enlargement of the time to file Lugo's Rule 3.851 motion, which was granted by the Florida Supreme Court.  While the district court acknowledged that normally requests for extensions in state court, and even state court orders granting them, do not toll AEDPA's statutory limitations period, see Howell v. Crosby, 415 F.3d 1250, 1251 (11th Cir. 2005), it concluded some equitable tolling was warranted in light of Lugo's "multiple written requests for his Rule 3.851 motion to be filed on October 6, 2004, in combination with the hurricanes in South Florida in 2004."

As to all other relevant time periods, the district court found that Lugo had failed to demonstrate that extraordinary circumstances prevented him from timely filing his federal petition or that he had diligently pursued his rights.  Based upon our review of all the facts and circumstances that were brought to the district court's attention in the Rule 60(b) proceeding, we affirm these district court

25

findings because we cannot fairly say "the record lacks substantial evidence to support them." San Martin, 633 F.3d at 1265 (quotation marks omitted).

Beyond that, we stress that we review the district court's decision denying a Rule 60(b) only for an abuse of discretion. "It is not an abuse of discretion for the district court to deny a motion under Rule 60(b) when that motion is premised upon an argument that the movant could have, but did not, advance before the district court entered judgment." Maradiaga v. United States, 679 F.3d 1286, 1294 (11th Cir. 2012).

Our decision that Lugo is not entitled to equitable tolling of AEDPA's one-year statutory deadline for seeking federal habeas relief disposes of this appeal. We write more here in response to our colleague's concurring opinion regarding the problem in Florida of state death-row inmates missing the AEDPA filing deadline despite the provision of state collateral counsel in every case. As the data our colleague has assembled shows, at least 34 death-row inmates in Florida, of which there are currently 397, have failed to meet the federal filing deadline in the eighteen years since AEDPA became effective in 1996. We agree with her that this number, which accounts for roughly 8% of Florida's current death-row population, is cause for concern about the quality of capital collateral representation in some Florida cases. The problem, for reasons largely unknown, appears to be of relatively recent vintage. As the appendix to the concurring

26

opinion shows, the earliest decision finding a missed statute-of-limitations deadline in a Florida capital case is 2004, which is eight years after AEDPA's enactment.[13] An even more striking fact is that the problem largely is a Florida one. Our own research indicates, for example, that during the eighteen-year period since AEDPA's enactment only one death-row inmate in Georgia has missed the statute-of-limitations deadline.[14] Georgia currently has 85 death-row inmates, so that is roughly 1%.[15]

We also agree with the concurring opinion that indigent state capital inmates are entitled to the appointment of federally funded counsel to assist them in the preparation and filing of a § 2254 federal habeas petition, perhaps even before they have sought state collateral relief. See 18 U.S.C. § 3599(a)(2); McFarland v. Scott, 512 U.S. 849, 855–56, 114 S.Ct. 2568, 2572 (1994) (holding that the right to

---

[13] In Wilcox v. Florida Department of Corrections, 158 F.3d 1209, 1211 (11th Cir. 1998), we held that for all of those prisoners who had completed the direct appeal process before AEDPA, the one-year limitations period began running on the statute's effective date, which was April 24, 1996.

[14] This number was derived from a Westlaw search for Georgia capital cases since AEDPA's 1996 enactment where a § 2254 petition was deemed untimely. Although the cases in Westlaw may not reflect all of the death-row inmates who have missed AEDPA's one-year deadline, there is no reason to believe that there are any more overlooked cases in Georgia than in Florida.

[15] We realize, of course, that the inmates on any given death row are at various stages of the long appeal and postconviction processes. As a result, taking the number of death-row inmates in a state who have missed the filing deadline over the years and dividing that number by the current population on death row in that state does not yield the actual percentage of cases that reach the federal habeas stage in which the filing deadline has been missed. It is only a way of compensating for the fact that the number of inmates on Florida's death row is about four times the number of Georgia's.

27

appointed counsel in federal habeas proceedings "adheres prior to the filing of a formal, legally sufficient habeas corpus petition" because it "includes a right to legal assistance in the preparation of a habeas corpus application"). We emphasize, however, that a state prisoner is not entitled, as a matter of statutory right, to have federally paid counsel assist him in the pursuit and exhaustion of his state postconviction remedies, including the filings of motions for state collateral relief that would toll the one-year federal filing period. See Harbison v. Bell, 556 U.S. 180, 189, 129 S.Ct. 1481, 1488 (2009) (emphasizing that § 3599 does not "require federally funded counsel to represent her client in any state habeas proceeding occurring after her appointment"); Gary v. Warden, Ga. Diagnostic Prison, 686 F.3d 1261, 1274 (11th Cir. 2012) ("[A]n indigent prisoner . . . may receive § 3599 funding only for those proceedings that ordinarily occur subsequent to [the filing of a § 2254 petition]."); King v. Moore, 312 F.3d 1365, 1368 (11th Cir. 2002) (holding, post-McFarland, that a state prisoner is not entitled to federally paid counsel for the purpose of pursuing state postconviction remedies); In re Lindsey, 875 F.2d 1502, 1506 (11th Cir. 1989) (holding, pre-McFarland, that the right to federally appointed counsel does not encompass "any proceedings convened under the authority of a State").

And while a district court is not wholly bereft of discretion in this area, we believe that it would be an abuse of that discretion for a district court to appoint

28

federal habeas counsel to assist a state prisoner in exhausting his state postconviction remedies before a formal § 2254 petition has been filed and, even then, only where the petitioner is unable to obtain adequate legal representation in state court. See Harbison, 556 U.S. at 189–90 & n.7, 129 S.Ct. at 1488–89 & n.7 (explaining that "a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation," yet emphasizing that § 3599 "provides for counsel only when a state petitioner is unable to obtain adequate representation," meaning that the provision of "state-furnished representation renders him ineligible for § 3599 counsel until the commencement of [] § 2254 proceedings") (emphasis added); Gore v. Crews, 720 F.3d 811, 814 n.1 (11th Cir. 2013) (stating in dicta that if a petitioner's "state court counsel is not providing representation adequate to exhaust his state court remedies, . . . a district court could determine, in its discretion, that it is necessary for court-appointed counsel to exhaust a claim in state court in the course of her federal habeas representation . . . .") (quotation marks omitted); see also Irick v. Bell, 636 F.3d 289, 292 (6th Cir. 2011) ("[E]ven if § 3599 would otherwise apply to Irick's state post-conviction proceedings, he would not be eligible for federal funding because state law affords him 'adequate representation.'") (quoting Harbison, 556 U.S. at 189, 129 S.Ct. at 1488).

29

This all makes good sense.  To mandate the provision of federally funded counsel to assist a state prisoner in his pursuit of state postconviction remedies not only "would increase the cost of implementing [§ 3599] enormously," Sterling v. Scott, 57 F.3d 451, 457 (5th Cir. 1995), but also "would have the practical effect of supplanting state-court systems for the appointment of counsel in collateral review cases," In re Lindsey, 875 F.2d at 1506.  It is unlikely that Congress intended either of these results when it authorized the appointment of federal counsel to aid state capital prisoners in seeking federal habeas relief in federal court.  See King, 312 F.3d at 1368 (noting that it is "unlikely" that Congress intended "to provide counsel, at federal expense, to state prisoners engaged in state proceedings").

We are also skeptical that filings of anticipatory, shell, or placeholder § 2254 petitions while state prisoners exhaust their state collateral remedies will significantly mitigate the problem of missed AEDPA deadlines among Florida inmates.  District courts are not required to accept such filings and stay the federal habeas proceedings, possibly for years, while a state prisoner completes his state collateral proceedings.  To the contrary, the Supreme Court has held that, except in limited circumstances, district courts must dismiss § 2254 petitions without prejudice until the petitioner has fully exhausted his state postconviction remedies with respect to each of his asserted claims for relief.  See Rose v. Lundy, 455 U.S. 509, 519–20, 102 S.Ct. 1198, 1204 (1983) (holding that district courts ordinarily

30

must dismiss a § 2254 petition without prejudice if the petitioner has not exhausted his state postconviction remedies); Rhine v. Weber, 544 U.S. 269, 275–79, 125 S.Ct. 1528, 1534–36 (2005) (holding that district courts may employ a "stay-and-abeyance" procedure in "limited circumstances" where there is good cause for the petitioner's failure to first exhaust all of his claims in state court, the unexhausted claims are not plainly meritless, and there is no indication that the petitioner engaged in deliberately dilatory tactics).

Perhaps a better method for combating the problem of missed AEDPA deadlines among Florida death-row inmates is to establish a capital habeas unit (CHU) in one or more of Florida's three federal districts, which could track capital cases in that state to ensure that the claims of death-row inmates are timely presented in both state and federal court. Currently, seventeen federal defender organizations across the country, operating in twelve states, have CHUs focused exclusively on capital habeas litigation in their respective jurisdictions and staffed by knowledgeable people trained in the complexities of such litigation. There are two CHUs now operating in this Circuit — one in the Middle District of Alabama, which helps to provide capital habeas representation in all three of Alabama's federal districts, and one in the Northern District of Georgia, which helps handle the capital case federal habeas litigation in that district. Although causation can be tricky phenomenon to pinpoint, we believe that it is no coincidence that the

31

number of untimely § 2254 petitions in Georgia, which has had a CHU since AEDPA's statute of limitations was enacted in 1996, is dramatically lower than it is Florida, which has never had a CHU in any of its three federal districts. Among other things, the CHU in the Northern District of Georgia, working in conjunction with the Georgia Resource Center and others, tracks capital cases in that state and helps ensure that there are no missed filing deadlines.

The same could be done in Florida. Establishing a CHU in one of that state's three federal districts would have several benefits. Not only could it provide direct representation to capital inmates in some federal habeas proceedings, thus minimizing the need for court-appointed counsel, but it could also provide critical assistance and training to private registry counsel who handle state capital cases in Florida's collateral proceedings. A CHU could also monitor and track capital cases in Florida to help prevent AEDPA's one-year limitations period from lapsing before a formal federal habeas petition has been filed. This Court is currently considering the administrative question of whether to authorize the creation of a CHU in the Northern District of Florida, like the one in the State of Georgia that has operated so effectively in tracking capital cases in that state to ensure that the claims of death-row inmates are timely presented and not barred by the federal statute of limitations.

## IV.  CONCLUSION

For the reasons outlined in this opinion, we conclude the district court properly dismissed Lugo's federal habeas corpus petition as time-barred, even without holding an evidentiary hearing.  We also conclude the district court did not abuse its discretion when it denied Lugo's Rule 60(b) motion.  We therefore affirm each of the district court's judgments in this consolidated appeal.

**AFFIRMED.**

MARTIN, Circuit Judge, concurring in judgment:

I agree with the Majority's holdings that: (1) Mr. Lugo failed to demonstrate that he is entitled to equitable tolling under Holland v. Florida, 560 U.S. 631, 130 S. Ct. 2549 (2010); and (2) the District Court did not abuse its discretion when it denied Mr. Lugo's Rule 60(b) motion. I write separately, however, because Mr. Lugo's case highlights a problem that we have seen before in our Court. The problem is the failure of state court-appointed collateral counsel to timely file a defendant's first federal habeas petition, with the result that federal courts are being barred from reviewing the merits of the claims of death row inmates. As I have looked into this problem, I have been struck by how widespread it is, so I devote some of my discussion to examining the scope of the problem. I also hope to contribute to the Majority's discussion about the rights of state capital habeas petitioners under federal law and the systems that are available to improve the ability of state capital habeas petitioners to get federal review of their cases.[1]

---

[1] To begin, I recognize that what I say here is not necessary to decide the equitable tolling issues presented by Mr. Lugo's case. The same is true of the opinions expressed by the Majority beyond its analysis of the statute of limitations and equitable tolling issues. See, e.g., Maj. Op. at 28 ("Our decision that Lugo is not entitled to equitable tolling of AEDPA's one-year statutory deadline for seeking federal habeas relief disposes of this appeal."); see also United States v. Kaley, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) (explaining that dicta includes "those portions of an opinion that are not necessary to deciding the case then before us," while the holding of a case is "comprised both of the result of the case and those portions of the opinion necessary to that result" (quotation marks omitted)).

I.

Mr. Lugo is only one of a number of death row prisoners in Florida who have failed to file their federal habeas petitions within the one-year statute of limitations for state prisoners.  See 28 U.S.C. § 2244(d)(1).  There are currently 397 men and women on Florida's death row.  See Death Row Roster, Fla. Dep't of Corr., http://www.dc.state.fl.us/activeinmates/deathrowroster.asp (last visited Apr. 23, 2014).  By my count, at least thirty-four of those inmates have missed their one-year filing deadline since AEDPA's effective date.[2]  Two of these thirty-four were recently executed: Juan Chavez on February 12, 2014, and Paul Howell on February 26, 2014.  In addition to the significant percentage of capital defendants affected,[3] this problem seems worthy of mention for several reasons.

---

[2]   The appendix attached to the end of my concurrence identifies, as best I can tell, the Florida capital prisoners who have missed AEDPA's one-year deadline.  While the large majority of these petitioners will likely never have the merits of their habeas claims reviewed in federal court because of the statute of limitations bar, we also know that a few have received alternative merits rulings, and a few have also successfully argued they are entitled to equitable tolling.  For example, upon remand from the Supreme Court, the petitioner in Holland demonstrated he was entitled to equitable tolling.  Holland v. Florida, No. 1:06-cv-20182 (S.D. Fla. Nov. 23, 2010), ECF No. 112 at 6.  Once Mr. Holland's habeas claims were reviewed on the merits, the District Court granted him a new trial based on his Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525 (1975), claim.  Holland v. Tucker, 854 F. Supp. 2d 1229, 1240–72, 1300 (S.D. Fla. 2012) (order granting in part petition for habeas corpus).  Of course, I express no opinion about the equitable tolling issues that may or may not exist in any case other than those we consider here in Mr. Lugo's case.  I also acknowledge that, despite my best research efforts, my identification of thirty-four capital prisoners may underrepresent the actual number who face AEDPA statute of limitation problems.  For example, I did not research now pending state postconviction cases.

[3]   The Majority opinion says "roughly 8%" of the current death row population failed to meet AEDPA's one-year filing deadline.  See Maj. Op. at 28.  This 8% figure is derived by dividing

35

First, the Supreme Court has told us that the "[d]ismissal of a <u>first</u> federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty."  <u>Lonchar v. Thomas</u>, 517 U.S. 314, 324, 116 S. Ct. 1293, 1299 (1996).  This is still true after AEDPA.  Although "state courts are the principal forum for asserting constitutional challenges to state convictions,"

---

the number of inmates in the appendix (34) by the total number of prisoners currently on death row (397).  <u>See</u> <u>Death Row Roster</u>, Fla. Dep't of Corr., http://www.dc.state.fl.us/activeinmates/ deathrowroster.asp (last visited Apr. 23, 2014).  I agree that 8% is more than enough to give "cause for concern about the quality of capital collateral representation in some Florida cases." <u>See</u> Maj. Op. at 28.  However, the 8% number minimizes the scope of the problem for several reasons.  First, for the reason I noted, my identification of thirty-four inmates is probably a low number.  Second, taking the percentage of the 34 against all 397 inmates currently on death row is problematic.  As the Majority forthrightly acknowledges, "the inmates on any given death row are at various stages of" litigation.  Maj. Op. at 29 n.15.  My information is that dozens of inmates on Florida's death row were sentenced only in the last two or three years, so their cases are not yet final on direct review.  <u>See</u> <u>Death Row Roster</u>.  Since those inmates' one-year deadline has not yet started to run, they should not be included in the estimate of Florida death row inmates with federal statute of limitation problems.  A fairer percentage would include only those capital inmates who did file a first § 2254 habeas petition since AEDPA became law, as well as those who could have filed a federal petition but did not.  While I do not know what that precise number is, it is probably significantly less than the total number of inmates currently on Florida's death row.  For example, the number would be closer to 12%, assuming 273 first § 2254 capital petitions were filed since AEDPA and 34 inmates untimely filed petitions.

Also, I would characterize the problem slightly differently than the Majority to the extent that it identifies this issue as unique to Florida.  <u>See</u> Maj. Op. at 28.  Certainly Florida is an outlier in missed one-year deadlines by capital defendants in states within the Eleventh Circuit. Florida may well be a stand out even among all states with the death penalty.  But it is also true that several Alabama death row inmates have filed untimely habeas petitions.  <u>See, e.g.</u>, <u>Melson v. Comm'r, Ala. Dep't of Corr.</u>, 713 F.3d 1086 (11th Cir. 2013), <u>cert. denied sub nom.</u> <u>Melson v. Thomas</u>, ___ U.S. ___, 134 S. Ct. 905 (2014); <u>Smith v. Comm'r, Ala. Dep't of Corr.</u>, 703 F.3d 1266 (11th Cir. 2012), <u>cert. denied sub nom.</u> <u>Smith v. Thomas</u>, ___ U.S. ___, 134 S. Ct. 513 (2013); <u>Myers v. Allen</u>, 420 F. App'x 924 (11th Cir. 2011); <u>Arthur v. Allen</u>, 452 F.3d 1234 (11th Cir. 2006); <u>Sibley v. Culliver</u>, 377 F.3d 1196 (11th Cir. 2004).  I understand Alabama to currently have 197 inmates on death row.  <u>See</u> <u>Alabama Inmates Currently on Death Row</u>, Ala. Dep't of Corr., http://www.doc.alabama.gov/DeathRow.aspx (last visited Apr. 23, 2014).

36

Harrington v. Richter, ___ U.S. ___, ___, 131 S. Ct. 770, 787 (2011), the Supreme Court recently reaffirmed the "importance of federal habeas corpus proceedings as a method for preventing individuals from being held in custody in violation of federal law," Trevino v. Thaler, ___ U.S. ___, ___, 133 S. Ct. 1911, 1916–17 (2013) (citing Martinez v. Ryan, ___ U.S. ___, ___, 132 S. Ct. 1309, 1315–16 (2012)).  Thus, state prisoners on death row have a right to federal habeas review, and this right should not depend upon whether their court-appointed counsel is competent enough to comply with AEDPA's statute of limitations.  See generally Hutchinson v. Florida, 677 F.3d 1097, 1103–11 (11th Cir. 2012) (Barkett, J., concurring in result).

Second, without federal review under AEDPA, we can offer no "guard against extreme malfunctions in the state criminal justice systems."  See Harrington, 131 S. Ct. at 786 (quotation marks omitted).  I would not expect "extreme malfunctions" in state criminal justice systems to happen very often, but they do happen.  Both the United States Supreme Court and this Court have found reason to grant habeas relief to Florida capital habeas petitioners under AEDPA.  See, e.g., Porter v. McCollum, 558 U.S. 30, 130 S. Ct. 447 (2009); Farina v. Sec'y, Fla. Dep't. of Corr., 536 F. App'x 966 (11th Cir. 2013); Cooper v. Sec'y, Dep't of Corr., 646 F.3d 1328 (11th Cir. 2011); Guzman v. Sec'y, Dep't of Corr., 663 F.3d 1336 (11th Cir. 2011); Johnson v. Sec'y, DOC, 643 F.3d 907 (11th Cir. 2011).  If

37

any of these habeas petitioners had missed their AEDPA limitations deadline, they likely would have been put to death without ever having received a look by the federal courts into the merits of their claims.  It is hard to see how they would have gotten the relief they did.

Third, it is simply arbitrary for our collateral review process to allow some capital defendants to get federal habeas review (because their court-appointed attorneys appreciate the significance of AEDPA's statute of limitations), while others do not.  Cf. Furman v. Georgia, 408 U.S. 238, 294–95, 92 S. Ct. 2726, 2754–55 (1972) (Brennan, J., concurring).  As the thirty-four prisoners identified in the appendix demonstrate, whether a Florida death row inmate gets federal habeas review may be decided without regard to the facts of their crime or the character of the defendant.

Sadly, Mr. Lugo's case illustrates how a prisoner's statute of limitations for filing a federal habeas petition can expire even before his counsel filed his state postconviction motion.  Mr. Lugo had until October 6, 2004, to file his federal petition for writ of habeas corpus or properly file an application for postconviction relief or other collateral review in state court to toll the time for filing his federal petition.  See 28 U.S.C. § 2244(d)(1)(A), (d)(2).  But neither he nor his state court-appointed counsel filed either.  By the time Mr. Lugo's attorney filed his state habeas petition on October 18, 2004, the federal statute of limitations had already

lapsed by 12 days.  See Maj. Op. at 5–6, 18.  Therefore, even if Mr. Lugo had filed a federal habeas petition on the day that his state collateral proceedings ended, it would have already been too late.  See Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001).

## II.

This alarming number of cases in which state-appointed attorneys have allowed their clients' federal statutes of limitations to expire naturally causes us who see these cases to question how prisoners can preserve their right to federal habeas review.  Certainly one of the things that prisoners can do is to seek appointed counsel in federal court close in time to when their cases become final on direct review.  The Supreme Court has held that under 18 U.S.C. § 3599(a)(2), state "[h]abeas petitioners facing execution now receive counsel as a matter of [statutory] right, not an exercise of the court's discretion."  Martel v. Clair, ___ U.S. ___, ___, 132 S. Ct. 1276, 1285 (2012); see also 18 U.S.C. § 3599(a)(2).  Beyond that, the Supreme Court has held that an indigent capital habeas petitioner's statutory "right to appointed counsel includes a right to legal assistance in the preparation of a habeas corpus application."  McFarland v. Scott, 512 U.S. 849, 856, 114 S. Ct. 2568, 2572 (1994).  "An attorney's assistance prior to the filing of a capital defendant's habeas corpus petition is crucial, because the complexity of our jurisprudence in this area . . . makes it unlikely that capital

39

defendants will be able to file successful petitions for collateral relief without the assistance of persons learned in the law." Id. at 855–56, 114 S. Ct. at 2572 (quotation marks omitted). Thus, federal courts have the authority to appoint counsel under § 3599 before a federal petition is filed and, in fact, even before a state petition is filed.

Applying this law to the facts of Mr. Lugo's case, Mr. Lugo or his state court-appointed counsel could have filed a request for counsel in federal court as soon as his case became final on direct review. Alternatively, Mr. Lugo could have filed a pro se request for the appointment of federal counsel once he had cause to believe his state court-appointed counsel was not going to timely file his federal petition. Had he done either of those things, I understand the District Court would have been obligated to appoint counsel for him, provided he otherwise met the financial eligibility requirements. See id. Also, Mr. Lugo's request would have had the benefit of initiating his federal habeas corpus proceedings, see id. at 856–57, 114 S. Ct. at 2572–73, thereby entitling him "to a variety of expert and investigative services upon a showing of necessity," id. at 855, 114 S. Ct. at 2572. See also 18 U.S.C. § 3599(f) (authorizing "investigative, expert, or other services [where] reasonably necessary for the representation of the defendant").

With the early appointment of federal habeas counsel, Mr. Lugo would have gained these benefits regardless of whether he was represented by state post-

conviction counsel and regardless of whether he had filed a state postconviction petition. I am not aware of any law or precedent which would require Mr. Lugo to wait until the conclusion of his state habeas proceeding before seeking counsel for his federal habeas proceedings. Certainly, it cannot be the case that Mr. Lugo was required to wait until his limitations period expired before he could request and be afforded competent and qualified federal habeas counsel to help him prepare and file his <u>federal</u> petition. Otherwise the statutory right to the assistance of counsel under § 3599 and <u>McFarland</u> would be meaningless.

My understanding is supported by the Defender Services Committee of the United States Judicial Conference, which has explained why appointment of counsel at the earliest possible time is important in federal habeas proceedings:

> Federal counsel need adequate time to investigate, research, and prepare proper capital habeas corpus petitions. Prior to even beginning work on the petition, federal counsel must collect and read the record, establish a relationship with the client, assemble a team that includes mitigation experts and fact investigators, and make preliminary evaluations regarding such matters as client competency, mental retardation, and mental health issues, as well as comply with the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases. Because extra-record claims can not be raised as part of direct appeals, they must be fully investigated and litigated in habeas corpus petitions.

> Statutes of limitations place strict limits on the time counsel has to file such a petition. Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), the statute of limitations for filing a petition is one year. <u>Experience has shown that one year is barely sufficient time to file a federal capital habeas corpus petition</u> even when the petitioner is represented by experienced, institutionally-

41

funded, full-time, federal defender staff well versed in capital habeas litigation.  In practice, waiting to appoint federal counsel until the state post-conviction proceeding is completed results in less than one year in which to file the federal habeas petition. The limitation period begins to run, subject to "tolling," from the latest of four triggering events, including "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" (i.e., a petition for writ of certiorari in the United States Supreme Court). 28 U.S.C. § 2244(d)(1).  Although "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation" under the AEDPA (28 U.S.C. § 2244(d)(2)), all or any portion of the federal statute of limitations could expire before the state post-conviction petition is filed.  State post-conviction counsel often expend nearly all of the federal limitations period before filing a state postconviction pleading.  This is especially true in states that have longer filing deadlines than those provided by the AEDPA.

Timely Appointment Strategy, U.S. Jud. Conf. Defender Servs. Comm., Goal 1 (Timeliness), Strategy 12 (Capital Habeas Corpus) & Goal 2 (Quality of Representation), Strategy 18 (Capital Habeas Corpus) cmt. (emphasis added).

Thus, state court prisoners on death row can and should take advantage of their statutory right to counsel in federal habeas proceedings at the time their case becomes final on direct review.  Doing so will protect a prisoner's right to federal habeas review, regardless of how long it takes for state postconviction counsel to file a state habeas petition. See n.5, infra.

42

III.

Of course, complications can arise when a prisoner petitions a federal court to appoint counsel during the pendency of his state collateral review proceedings. None of these complications, however, should be serious enough to dissuade a federal court from appointing counsel to prisoners. The Majority, for example, is concerned that federally-appointed counsel will use federal funds to litigate a prisoner's habeas claims in state court. I have no quarrel with that concern. In fact, I generally agree with the Majority "that a state prisoner is not entitled, as a matter of statutory right, to have federally paid counsel assist him in the . . . exhaustion of his state postconviction remedies." Maj. Op. at 29.

On the other hand, district courts plainly have discretion to authorize federally-appointed counsel to exhaust claims on a "case-by-case" basis. Harbison v. Bell, 556 U.S. 180, 190 n.7, 129 S. Ct. 1481, 1489 n.7 (2009) ("Pursuant to § 3599(e)'s provision that counsel may represent her client in 'other appropriate motions and procedures,' a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation." (emphasis added)). The Judicial Conference Committee on Defender Services has issued a memorandum to provide guidance to courts when they are asked to appropriate federal funds for CJA attorneys or federal defender organizations who wish to exhaust state court claims. See

43

Memorandum from Judge Claire V. Eagan, Chair, Judicial Conference Comm. on Defender Servs., to Judges, U.S. Dist. Courts, et. al. 1 (Dec. 9, 2010) (addressing "Use of Defender Services Appropriated Funds by Federal Appointed Counsel for State Court Appearances in Capital Habeas Cases).  When a district court is presented with such a request, the Committee recommends that the presiding judge make a case-by-case determination, considering an extensive laundry list of things, including the following:

- the availability of the petitioner's original state postconviction counsel or other qualified state counsel;
- the availability of state funds for investigative and expert services;
- the willingness of the state court to appoint and compensate the petitioner's federal counsel;
- the number and nature of the claims to be exhausted;
- state court rules governing the appearance of counsel;
- any unwarranted delay that would be caused by the lack of continuity in not having federal counsel handle the exhaustion in state court;
- the need to avoid disruption of the proceedings;
- the need to avoid disruption of the attorney/client relationship;
- whether the investigation and research as to the unexhausted claim has already been done by the federal counsel;

Id. at 3–4; see also Federal Judicial Center, Capital § 2254 Habeas Cases: A Pocket Guide for Judges 10 (2012), available at http://www.fjc.gov/public/pdf.nsf/lookup /cap2254hab.pdf/$file/cap2254hab.pdf.  Having federal district judges consider these factors should protect against the Majority's concern that federal funds will be spent on litigating a prisoner's habeas claims in state court.

44

It is not my goal to propose a solution to the problem of ensuring the timely filing of state postconviction motions. While the problem of timely filed state habeas petitions may be related to the problem of blown federal deadlines, the two issues are distinct.[4] And this distinct state problem should not interfere with the separate obligation of federal courts to timely appoint federal habeas counsel upon request. Indeed, the reality that state court-appointed counsel too often fail to properly file a postconviction motion in state court before the state and federal statutes of limitation expires supports the need to appoint independent federal counsel early enough that they can investigate, prepare, and timely file a federal habeas corpus petition.[5]

---

[4] Of course when a petitioner's "application for State post-conviction or other collateral review" is filed is important because it tolls the federal statute of limitations period if it is filed before the federal limitations period expires. See 28 U.S.C. § 2244(d)(2); Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001).

[5] In any event, potential federal habeas claims are not limited to issues raised in state court postconviction proceedings. Federally-appointed counsel could, for example, timely file a federal petition raising only claims that were raised on direct appeal and/or file a mixed petition and request that his federal petition be held in abeyance. See Rhines v. Weber, 544 U.S. 269, 278, 125 S. Ct. 1528, 1535 (2005) ("[I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition."); see also Hutchinson, 677 F.3d at 1102 & n.7 (recognizing that a capital habeas petitioner could file a federal place-holder petition that could be held in abeyance until efforts to obtain state collateral review were completed).

Furthermore, federal counsel appointed under § 3599 cannot simply assume that a constitutional claim that was not exhausted in state court will be precluded from merits review in federal court, especially without first investigating the cause for the default and whether the petitioner was prejudiced, or whether some other possibility exists to excuse the procedural default. See, e.g., Martinez, 132 S. Ct. at 1320 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural

45

Finally, I enthusiastically agree with the Majority that one or more Florida Capital Habeas Units (CHUs) would be helpful in "combating the problem of missed AEDPA deadlines among Florida death-row inmates," Maj. Op. at 34, at least for those inmates who are lucky enough to be represented by CHU attorneys.[6] I emphasize, however, that creating a CHU or CHUs will not by itself ensure that all Florida death row inmates will get highly qualified federal counsel or that federal counsel is appointed in a timely manner or that more AEDPA deadlines will not be missed in the future. All indigent death row inmates, whether represented by CHU, CCRC, or Criminal Justice Act panel attorneys, are entitled to the timely appointment or qualified counsel for the purpose of investigating, preparing, and timely filing a federal habeas corpus petition. See 18 U.S.C. §3599. Even after counsel is appointed in federal court, there can be circumstances in which the "interests of justice" require district courts to replace appointed counsel,

---

default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.").

[6]  The American Bar Association issued a report in 2006 that gives historical context and addresses some of the broader issues concerning the quality of state court-appointed capital collateral counsel in Florida. See Am. Bar Ass'n, Evaluating Fairness and Accuracy in State Death Penalty Systems: The Florida Death Penalty Assessment Report 236–37 (2006) (discussing and criticizing the qualifications and performance of some of the registry attorneys appointed under Florida's system for the appointment of post-conviction counsel, including that "registry attorneys in at least twelve separate cases filed their clients' state post-conviction motions or federal habeas corpus petitions between two months to three years after the applicable filing deadline").

46

see Martel, 132 S. Ct. at 1285–86, or appoint conflict-free co-counsel to fully develop and argue equitable tolling issues that implicate appointed counsel's own conduct, see id. at 1286 ("Even in the absence of [18 U.S.C 3559(e)'s substitution of counsel] provision, a court would have to ensure that the defendant's statutory right to counsel was satisfied throughout the litigation; for example, the court would have to appoint new counsel if the first lawyer developed a conflict with or abandoned the client.").  See also Thomas v. McDonough, No. 3:03-cv-237 (M.D. Fla. Feb. 27, 2006), ECF No. 31 at 5 (consolidated order appointing conflict-free co-counsel in three capital § 2254 cases where state contended the federal petitions were time barred and the District Court determined that "at least some of the grounds upon which an equitable tolling argument might be based implicated appointed counsel's own conduct").

Alas, none of these ideas about the implementation of 18 U.S.C. § 3599 are of any help to Mr. Lugo.  Given the facts of his case, we are barred from considering the merits of his claims.  Although this panel has surely exceeded the specifics of Mr. Lugo's case, this seemed to be a proper place to talk about the systems in place to ensure meaningful federal habeas review for inmates sentenced to death in this Circuit.

47

APPENDIX[7]

**Florida capital defendants who filed § 2254 habeas petitions which were untimely and did not qualify for equitable tolling:**

1.  Chadwick Banks, Jr.  v. Sec'y, Fla. Dep't of Corr., 491 F. App'x 966 (11th Cir. 2012), cert. denied sub nom. Banks v. Crews, ___ U.S. ___, 134 S. Ct. 118 (2013).

2.  Michael Bell v. Fla. Att'y Gen., 461 F. App'x 843 (11th Cir. 2012) (per curiam), petition for cert. filed, No. 13-8415 (Nov. 14, 2013).

3.  Oscar Ray Bolin v. Sec'y, Fla. Dep't of Corr., No. 8:10-cv-1571 (M.D. Fla. July 1, 2013), ECF No. 31 (order finding petition time barred and alternatively denied on the merits), certificate of appealability denied, No. 13-13539 (11th Cir. Sept. 20, 2013), cert. denied sub nom., Bolin v. Florida, ___ U.S. ___, 134 S. Ct. 695 (2013).

4.  Donald Lee Bradley v. Sec'y, Fla. Dep't of Corr., No. 3:10-cv-1078 (M.D. Fla. Mar. 12, 2014), ECF No. 15 at 2 n.4, 55 (order finding that petition was untimely and did not qualify for equitable tolling and denying the petition on the merits).

5.  George Brown v. Sec'y, Fla. Dep't of Corr., No. 8:06-cv-142 (M.D. Fla. Feb.13, 2006), ECF No. 5 (order to show cause why petition should not be dismissed as time barred where AEDPA limitations period expired on March 19, 2005 and federal habeas petition was not filed until January 25, 2006).[8]

6.  Harry Lee Butler v. Sec'y, Fla. Dep't of Corr., No. 8:12-cv-02859 (M.D. Fla. Jan. 24, 2014), ECF No. 20 (order denying petition as time-barred and denying

---

[7] Cases are listed alphabetically by the defendant's last name and included without regard for the merits of the underlying claims for relief.  These cases are offered as representative, not exhaustive, examples of cases in which the statutory deadline for filing a habeas petition appears to have been missed.

[8]  Mr. Brown's federal habeas case was dismissed by the District Court because Mr. Brown died while the case was still pending and before the Court had an opportunity to finally rule on his request for equitable tolling. See Brown, No. 8:06-cv-142 (M.D. Fla. Mar. 12, 2007), ECF No. 14 (order dismissing petition because of petitioner's death).

equitable tolling), <u>certificate of appealability granted</u>, No. 14-10797 (11th Cir. Apr. 11, 2014).

7. <u>Juan Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057 (11th Cir. 2011), <u>cert. denied sub nom.</u> <u>Chavez v. Tucker</u>, ___ U.S. ___, 132 S. Ct. 1018 (2012).[9]

8. <u>Loran Cole v. Crosby</u>, No. 5:05-cv-222, 2006 WL 1169536 (M.D. Fla. May 3, 2006) (order dismissing petition as time barred without discussing equitable tolling and, alternatively, denying the petition on the merits), <u>certificate of appealability denied</u>, No. 06-13090 (11th Cir. Jul. 31, 2007).

9. <u>Floyd Damren v. Sec'y, Fla. Dep't of Corr.</u>, No. 3:03-cv-397-J-32, 2013 WL 5353246 (M.D. Fla. Sept. 24, 2013), <u>appeal docketed</u>, No. 13-15017 (11th Cir. Oct. 29, 2013).

10. <u>James Ford v.  Sec'y, Dept. of Corr.</u>, No. 2:07-cv-333, 2012 WL 113523 (M.D. Fla. Jan. 13, 2012), <u>certificate of appealability denied</u>, No. 09-14820 (11th Cir. Mar. 14, 2012).

11. <u>Charles Foster v. Crosby</u>, No. 5:03-cv-108 (N.D. Fla.  Dec. 13, 2004), ECF No. 28, <u>certificate of appealability denied</u>, No. 05-10344 (11th Cir. Sept. 30, 2005), <u>cert. denied sub nom.</u> <u>Foster v. McDonough</u>, 549 U.S. 1251, 127 S. Ct. 1369 (2007).

12. <u>Ricardo Gonzalez v. Sec'y, Fla. Dep't of Corr.</u>, No. 1:08-cv-22909 (S.D. Fla. Sept. 28, 2009), ECF No. 15 (order finding petition time barred and alternatively denying claims on the merits), <u>aff'd on other grounds</u>, 629 F.3d 1219 (11th Cir. 2011) (per curiam), <u>cert. denied sub nom.</u> <u>Gonzalez v. Tucker</u>, ___ U.S. ___, 132 S. Ct. 543 (2011).

13. <u>Olen Gorby v. McNeil</u>, 530 F.3d 1363 (11th Cir. 2008) (per curiam) (affirming District Court's dismissal of federal petition as time barred but not addressing equitable tolling), <u>cert. denied</u>, 556 U.S. 1109, 129 S. Ct. 1592 (2009).[10]

---

[9]   Mr. Chavez was executed on February 12, 2014.

[10]   I understand that Mr. Gorby died of natural causes while in custody in May 2013.

14. Robert Gordon v. Crosby, No. 8:04-cv-355, 2006 WL 2474068 (M.D. Fla. Aug. 25, 2006), certificate of appealability denied sub nom. Gordon v. Sec'y, Dep't of Corr., 479 F.3d 1299 (11th Cir. 2007) (per curiam).

15. Richard Hamilton v. Sec'y, DOC, 410 F. App'x 216 (11th Cir. 2010) (per curiam), cert. denied sub nom Hamilton v. Tucker, ___ U.S. ___, 132 S. Ct. 226 (2011).

16. Paul Howell v. Crosby, 415 F.3d 1250 (11th Cir. 2005), cert. denied, 546 U.S. 1108, 126 S. Ct. 1059 (2006).[11]

17. Jeffrey Hutchinson v. Florida, 677 F.3d 1097 (11th Cir. 2012), cert. denied, ___ U.S. ___, 133 S. Ct. 435 (2012).

18. Ronnie Johnson v. Fla. Dep't of Corr., 513 F.3d 1328 (11th Cir. 2008), cert. denied sub nom. Johnson v. McNeil, 555 U.S. 851, 129 S. Ct. 348 (2008).[12]

19. Gary Lawrence v. Florida, 421 F.3d 1221 (11th Cir. 2005), aff'd, 549 U.S. 327, 127 S. Ct. 1079 (2007).

20. Pablo San Martin v. McNeil, 633 F.3d 1257 (11th Cir. 2011), cert. denied sub nom. San Martin v. Tucker, ___ U.S. ___, 132 S. Ct. 158 (2011).

21. Kenneth A. Stewart v. Sec'y, Dep't of Corr., No. 8:11-cv-44 (M.D. Fla. Feb. 27, 2014), ECF No. 29 (order dismissing petition as time barred), certificate of appeal pending, 14-11238 (11th Cir. Apr. 15, 2014).

22. William Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311 (11th Cir. 2006), cert. denied sub nom. Sweet v. McDonough, 550 U.S. 922, 127 S. Ct. 2139 (2007).

23. Anthony Wainwright v. Sec'y, Dept. of Corr., 537 F.3d 1282 (11th Cir. 2007) (per curiam).

---

[11] Mr. Howell was executed on February 26, 2014.

[12] Mr. Johnson has two death sentences stemming from two separate state court proceedings involving different victims, but occurring nine days apart. Johnson, 513 F.3d at 1329; see also Johnson v. State, 696 So. 2d 317 (Fla. 1997); Johnson v. State, 696 So. 2d 326 (Fla. 1997). He filed a pair of § 2254 federal habeas petitions, one attacking his first death sentence, and the other attacking his second death sentence. Johnson, 513 F.3d at 1329. Both § 2254 petitions were dismissed as untimely. Id.

50

24. <u>Michael Zack v. Tucker</u>, 704 F.3d 917 (11th Cir. 2013) (en banc) (finding all claims except one claim to be time barred), <u>cert. denied sub nom.</u> <u>Zack v. Crews</u>, ___ U.S. ___, 134 S. Ct. 156 (2013).

   **Florida capital defendants who filed § 2254 habeas petitions which were untimely and qualified for equitable tolling:**

25. <u>Mark Asay v. McNeil</u>, No. 3:05-cv-147, 2009 WL 9081403 (M.D. Fla. Feb. 10, 2009), <u>cert. denied</u>, 558 U.S. 1007, 130 S. Ct. 495 (2009).[13]

26. <u>Ronald Palmer Heath v. Sec'y, Fla. Dep't of Corr.</u>, No. 1:09-cv-148-MCR-CAS (N.D. Fla. August 16, 2010), ECF No. 66 (order adopting report and recommendation, ECF No. 62, finding petition untimely but equitable tolling appropriate making petition timely filed), <u>denial of habeas corpus aff'd</u>, 717 F.3d 1202 (11th Cir. 2013).

27. <u>Albert Holland v. Florida</u>, 560 U.S. 631, 130 S. Ct. 2549 (2010), <u>remanded to</u> 854 F. Supp. 2d 1229 (2012) (vacating conviction and granting request for new trial).

28. <u>Jose Jimenez v. Crosby</u>, No. 1:04-cv-20132 (S.D. Fla. Jan. 30, 2006), ECF No. 73 (finding equitable tolling but denying relief), <u>certificate of appealability denied sub nom.</u> <u>Jimenez v. Fla. Dep't of Corr.</u>, 481 F.3d 1337 (11th Cir. 2007) (per curiam), <u>cert. denied sub nom.</u> <u>Jimenez v. McDonough</u>, 552 U.S. 1029, 128 S. Ct. 628 (2007).

29. <u>William Thomas v. McNeil</u>, No. 3:03-cv-237, 2009 WL 9081403 (M.D. Fla. Feb. 10, 2009) (finding equitable tolling and denying motion to dismiss for untimeliness), <u>cert. denied</u>, 558 U.S. 1007, 130 S. Ct. 498 (2009), <u>relief denied sub nom.</u> <u>Thomas v. Sec'y, Fla. Dep't of Corr.</u>, No. 3:03-cv-237 (M.D. Fla. Sept. 3, 2013), ECF No. 141, <u>appeal docketed</u>, No.13-14635 (11th Cir. Oct. 7, 2013).

30. <u>Ernest Whitfield v. Sec'y, Dep't of Corr.</u>, No. 8:07-cv-1823 (M.D. Fla. May 31, 2012), ECF No. 59 (vacating order granting motion to dismiss petition as time barred and finding petitioner was entitled to equitable tolling), <u>certificate of appealability denied</u>, No. 13-13625 (11th Cir. Mar. 24, 2014).

---

[13] The District Court recently denied Mr. Asay's habeas petition. <u>See</u> <u>Asay v. Sec'y, Fla. Dep't of Corr.</u>, No. 3:05-cv-147 (M.D. Fla. April 14, 2014), ECF No. 152 at 51 (order denying petition and granting certificate of appealability).

**Florida capital defendants identified by the Clerk of the Florida Supreme Court who have been denied relief in initial state postconviction proceedings but do not appear to have timely filed a federal habeas petition:**[14]

31. Marvin Jones v. State, 928 So. 2d 1178 (Fla. 2006).

32. David Miller v. State, 926 So. 2d 1243 (Fla. 2006).

33. James Rose v. State, 985 So. 2d 500 (Fla. 2008).

**Other Florida Capital defendants who the Florida Attorney General has alleged would have had an untimely filed federal habeas petition:**

34. Byron Bryant v. McNeil, 9:05-cv-80562 (S.D. Fla. Feb. 23, 2009), ECF No. 23 at 3 (motion to dismiss for lack of prosecution alleging that no federal petition had been filed and more than three years of untolled time had elapsed since petitioner Bryant's case became final in state postconviction).[15]

---

[14] The Clerk of the Florida Supreme Court is required to certify to the governor those individuals on the state's death row who have (1) completed their direct appeal, state postconviction proceeding, and federal habeas proceeding or (2) "[a]llowed the time permitted for filing a habeas petition in federal court to expire." Fla. Stat. § 922.052. The purpose of the certification is to facilitate the issuance of warrants of execution. Id. The individual cases listed here are identified in the Clerk's October 4, 2013 certification letter as having failed to file a federal habeas petition "within the time frame allowed." Letter from Thomas D. Hall, Clerk, Supreme Court of Florida, to Rick Scott, Florida State Governor (Oct. 4, 2013), available at http://prod-admin1.halifax.atex.cniweb.net:8080/polopoly_fs/1.214714.1381180730%21/ menu/standard/file/8%20appeals.pdf. For each of these defendants, we could find no evidence of any federal habeas petition filed to date. A habeas petition has recently been filed in another case included in the Clerk's letter, Anton Krawczuk v. State, 92 So. 3d 195 (Fla. 2012), but there has yet to be a determination on timeliness, entitlement to equitable tolling, or the merits. Petition for Writ of Habeas Corpus by a Person in State Custody, Krawczuk v. Crews, No. 2:13-cv-00559 (M.D. Fla. July 18, 2013), ECF No. 1.

[15] I understand Mr. Bryant died of natural causes on September 19, 2009. Since Mr. Bryant never filed a § 2254 habeas petition, there has not been a determination about whether his petition would have been considered untimely or qualified for equitable tolling. However, as the Attorney General's February 9, 2009 motion to close the case for lack of prosecution alleged, it appears that more than three years of un-tolled time had passed since Mr. Bryant's initial round of state postconviction had become final and no § 2254 federal petition had been filed. Bryant, 9:05-cv-80562 (S.D. Fla. Feb. 23, 2009), ECF No. 23 at 1–3 (noting that Mr. Bryant's case became final on November 13, 2001, when the U.S. Supreme Court denied his petition for certiorari review from his direct appeal, see Bryant v. Florida, 534 U.S. 1025, 122 S. Ct. 557

52

(2001), and the Florida Supreme Court issued its mandate on May 19, 2005 following the denial of state postconviction relief, see Bryant v. State, 901 So. 2d 810 (Fla. 2005)); see also Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000) (per curiam) (concluding that, in Florida, properly filed state postconviction motions remain pending for purposes of 28 U.S.C. § 2244(d)(2) until issuance of the state appellate court's mandate).