PRYOR, Circuit Judge:
The issue in this appeal is whether the district court abused its discretion when it ruled that the decision in Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), which altered our previous interpretation of the statute of limitations of one year for a petition for a writ of habeas corpus, 28 U.S.C. § 2244(d)(1), *1258 was not an extraordinary circumstance that warranted vacating a final judgment, Fed.R.Civ.P. 60(b), that dismissed a habe-as petition as untimely. A Florida court sentenced Paul Howell to death for the murder of Trooper James Fulford of the Florida Highway Patrol who intercepted and opened a bomb that Howell sent to a woman he feared would report a murder committed as part of drug trafficking conspiracy. More than a year after Howell’s conviction and death sentence became final, his counsel filed a motion for state collateral review. Several years later, Howell filed a federal petition for a writ of habeas corpus. The district court dismissed Howell’s petition as untimely, and we affirmed. Howell v. Crosby, 415 F.3d 1250 (11th Cir.2005). On the eve of his execution, Howell filed a motion for relief from judgment under Rule 60(b) and argued that the decision in Holland established that his federal petition had been timely because the statute of limitations should have been equitably tolled, 28 U.S.C. § 2244(d)(2), based on the failure of his counsel to file a motion for state collateral review within a year after his conviction and sentence became final. The district court denied Howell’s motion because it concluded that the change in the interpretation of the statute of limitations was not an extraordinary circumstance that would entitle Howell to relief from a final judgment. We affirm.
I. BACKGROUND
Paul Howell was a leader of an extensive and sophisticated operation to sell crack cocaine across Florida, Alabama, Mississippi, Georgia, North Carolina, and South Carolina. United States v. Mothersill, 87 F.3d 1214, 1217 (11th Cir.1996). In August 1991, Howell’s brother, Patrick, planned, with Michael Morgan, to rob a drug dealer named Alfonso Tillman. Id. Howell rented a car for Patrick and Morgan to use for the robbery. Id. While Patrick drove the car and Tillman sat in the front passenger seat, Morgan shot and killed Tillman. Id. Howell and Patrick attempted to clean up the car after the shooting, but Morgan’s girlfriend, Tammie Bailey, saw the blood and bullet holes in the car. Id.
By October 1991, Howell had taken over the supervisory role in the drug operation from Patrick, who was incarcerated, and Howell became concerned that Bailey would report the murder of Tillman to the authorities. Id. After Bailey complained to Howell that she needed a microwave to warm milk for her sick baby, Howell paid a friend to buy a microwave from Sears. Howell then constructed a pipe bomb and placed it in the microwave, which he gift-wrapped for delivery to Bailey. Howell paid Lester Watson to deliver the gift-wrapped package to Bailey in a rental car.
On February 1, 1992, Lester Watson and Curtis Williams were driving the rental car on Interstate Highway 10 when they were stopped by a Florida Trooper, James Fulford, for speeding. After Fulford determined that Watson did not have a driver’s license, two local deputies arrived to arrest him. Watson gave the officials permission to search the car, and the deputies took Watson and Williams to the Jefferson County jail. Because the rental car was registered to Howell, the dispatcher called him to inquire whether the car was stolen. Howell told the dispatcher that he had given Watson permission to drive the car, and the dispatcher informed Howell that the car would be impounded.
Howell did not warn anyone about the pipe bomb in the car. When Fulford removed the gift-wrapped microwave from the trunk and attempted to open it, the bomb exploded. The bomb severed Ful-ford’s left leg and nearly severed his right leg. Fulford later died from his injuries.
*1259 Howell was prosecuted in a Florida court for first-degree murder and making, possessing, placing, or discharging a destructive device or bomb. Frank Sheffield represented Howell in his trial. During his representation of Howell, Sheffield reported to the trial court that his wife and secretary had received a telephone call at his office and that the caller had told her to deliver the message “that if Paul Howell goes down, Mr. Sheffield is going down also.” The trial court denied Sheffield’s motion to withdraw. The prosecution moved to disqualify Sheffield, but the trial court denied the motion.
A Florida jury found Howell guilty of first-degree murder and of making, possessing, placing, or discharging a destructive device or bomb. Howell v. State, 707 So.2d 674, 676-77 (Fla.1998). And the jury returned a special verdict that found that the charge of first-degree murder was established under both the theory of premeditation and the theory of felony murder. Id. at 677. The jury recommended the death penalty by a vote of ten to two. Id.
The trial court imposed the death penalty. Id. The trial court found the following five aggravating factors: (1) Howell knowingly created a great risk of death to many persons; (2) Howell committed the murder while engaged in the unlawful making, possessing, placing, or discharging of a destructive device or bomb; (3) Howell committed the murder to avoid or prevent a lawful arrest; (4) Howell murdered a law enforcement officer engaged in the performance of his official duties; and (5) Howell committed the murder in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. Id. The trial court found the following five statutory and nonstatutory mitigating factors: (1) Howell had no significant history of criminal activity; (2) the murder was committed while Howell was under the influence of extreme mental or emotional disturbance; (3) Howell had served in the military and received an honorable discharge; (4) Howell behaved well as a pretrial detainee; and (5) Howell was a good family .man. Id. The trial court determined that the aggravating factors far outweighed the mitigating factors, but the trial court declined to impose a separate sentence for the construction of the bomb because the two convictions were based on the same underlying conduct. Id.
On direct appeal, the Supreme Court of Florida affirmed Howell’s conviction and sentence. See id. at 683. The Supreme Court of the United States then denied Howell’s petition for a writ of certiorari on June 26, 1998. Howell v. Florida, 524 U.S. 958, 118 S.Ct. 2381, 141 L.Ed.2d 747 (1998). Howell then had one year within which to file a federal petition for a writ of habeas corpus, but “a properly filed application for State post-conviction or other collateral review” would have tolled the federal limitations period. 28 U.S.C. § 2244(d)(1)(A), (d)(2).
A Florida court then appointed Danielle Jorden as Howell’s postconviction counsel, and she filed a motion for an extension of time to file for state collateral review. The state court granted an extension of time that allowed Jorden to file a motion for collateral review by August 30, 1999. Jorden erroneously believed that the motion for an extension of time would also toll the federal limitations period. Howell, 415 F.3d at 1251.
Jorden filed Howell’s motion for state collateral review on August 30, 1999. The trial court denied Howell’s motion, and the Supreme Court of Florida affirmed. Howell v. State, 877 So.2d 697, 705 (Fla.2004).
On July 26, 2004, Howell filed a federal petition for a writ of habeas corpus. In his petition, Howell alleged that he had *1260 been denied the effective assistance of counsel because the trial court refused to allow Sheffield to withdraw from his representation. The Secretary then filed a motion to dismiss Howell’s petition as untimely. Howell conceded that his petition should have been filed before June 27, 1999, but he argued that the statute of limitations should be tolled based on Jor-den’s mistake. The district court dismissed the petition as untimely because it concluded that “[petitioner’s collateral counsel’s filing of his [postconviction] motion without leaving sufficient time to file a federal petition is not an extraordinary circumstance which warrants application of the equitable tolling doctrine.” We affirmed the dismissal of Howell’s petition as untimely because our precedents held that “attorney negligence is not a basis for equitable tolling.” Howell, 415 F.3d at 1252.
On January 18, 2013, the Governor of Florida, Rick Scott, signed a warrant for Howell’s execution to occur on Tuesday, February 26, 2013, at 6:00 p.m., but on February 20, 2013, Howell filed an emergency motion for relief from judgment in the district court. See Fed.R.Civ.P. 60(b). The district court denied Howell’s motion under Rule 60(b) as untimely, and the district court ruled that, even if the motion were timely, Howell was not entitled to relief under Rule 60(b)(6). The district court rejected the argument that the intervening change in the law effected by Holland, which held that attorney behavior far more serious than negligence might entitle a prisoner to relief from a judgment, was an extraordinary circumstance that would allow the court to reopen a judgment.
On February 25, 2013, the district court issued a certificate of appealability. That certificate was limited to the question whether the decision of the Supreme Court in Holland, is an extraordinary circumstance under Rule 60(b)(6) sufficient to justify the reopening of the final judgment of dismissal. Based on Eleventh Circuit Rule 22—4(a)(7), we entered a temporary stay of execution pending consideration of the merits of this appeal.
II. STANDARD OF REVIEW
We review the denial of a motion for relief from judgment under Rule 60(b) for an abuse of discretion. Cano v. Baker, 435 F.3d 1337,1341 (11th Cir.2006).
III. DISCUSSION
A prisoner whose petition for a writ of habeas corpus has been denied may file a motion, under Rule 60(b), to challenge “some defect in the integrity of the federal habeas proceedings,” but not “to add a new ground for relief.” Gonzalez v. Crosby, 545 U.S. 524, 532, 125 S.Ct. 2641, 2648, 162 L.Ed.2d 480 (2005). Under Rule 60(b), the prisoner must prove “ ‘extraordinary circumstances’ justifying the reopening of a final judgment.” Id. at 535, 125 S.Ct. at 2649 (quoting Aekermann v. United States, 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950)). Howell argues that the change in law effected by the decision of the Supreme Court in Holland is an extraordinary circumstance, but the district court did not abuse its discretion when it denied his motion.
The Supreme Court has explained that extraordinary circumstances that warrant the reopening of a judgment “will rarely occur in the habeas context,” Gonzalez, 545 U.S. at 535, 125 S.Ct. at 2649, and the Supreme Court has held that a change in the interpretation of the statute of limitations for a federal habeas petition is not an exceptional circumstance, id. at 536-37, 125 S.Ct. at 2650-51. In Gonzalez, the Court held that the change in law effected by the decision in Artuz v. Bennett, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000), which held that a state petition *1261 could be properly filed so as to toll the federal statute of limitations even when all of the claims had been procedurally defaulted, was not an extraordinary circumstance. See Gonzalez, 545 U.S. at 536, 125 S.Ct. at 2650. The Court “d[id] not agree” that this “change in the interpretation of the AEDPA statute of limitations” created an extraordinary circumstance. Gonzalez, 545 U.S. at 536, 125 S.Ct. at 2650. The Court instead explained that “[i]t is hardly extraordinary that [after the dismissal of the prisoner’s petition based on the statute of limitations], this Court arrived at a different interpretation.” Id. And the Court explained that, “[i]f Artuz justified reopening long-ago dismissals based on a lower court’s unduly parsimonious interpretation of [the statute of limitations], then Pace v. DiGuglielmo, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005), would justify reopening long-ago grants of habeas relief based on a lower court’s unduly generous interpretation of the same tolling provision.” Id. at 536-37, 125 S.Ct. at 2650-51.
The district court did not abuse its discretion when it read Gonzalez to mean that the change of law in Holland was not an extraordinary circumstance. Like the decision in Artuz, the decision in Holland altered the interpretation of the statute of limitations for a petition for a writ of habeas corpus: The Supreme Court explained that a per se rule that “even attorney conduct that is grossly negligent can never warrant [equitable] tolling absent bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer’s part,” was “too rigid.” Holland, 130 S.Ct. at 2563 (internal quotation marks omitted). But the Supreme Court in Gonzalez ruled that this kind of change in decisional law is not an extraordinary circumstance under Rule 60(b). “It is hardly extraordinary that ..., th[e Supreme] Court arrived at a different interpretation” of the statute of limitations after our decision that Howell’s petition was untimely. Gonzalez, 545 U.S. at 536,125 S.Ct. at 2650.
Howell argues that Gonzalez does not govern his motion because the Supreme Court in that appeal also “placed heavy emphasis on the petitioner’s ‘lack of diligence’ in failing to seek further review at the time that his original [ ] petition was denied,” but the district court did not abuse its discretion when it read Gonzalez to hold otherwise. In Gonzalez, the Court explained that the prisoner had “abandoned any attempt to seek review of the District Court’s decision on this statute-of-limitations issue” before the Court decided Artuz. Gonzalez, 545 U.S. at 537, 125 S.Ct. at 2651. “This lack of diligence confirm[ed] that Artuz [wa]s not an extraordinary circumstance justifying relief from the judgment in petitioner’s case.” Id. Gonzalez explained that the delay of the prisoner in that appeal “confirmed” that the change in the law was not extraordinary, not that the change in the law was not extraordinary because of the delay. Id. In this circumstance, we cannot say that the district court abused its discretion in denying Howell’s motion.
IV. CONCLUSION
The denial of Howell’s motion for relief from judgment is AFFIRMED.