**Dana S. CANNON, Appellant,**

v.

**STATE of Florida, Appellee.**

**CASE NO. 1D16–93**

District Court of Appeal of Florida, First District.

Opinion filed December 16, 2016.

Michael Ufferman, Joshua D. Zelman, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Michael McDermott, Assistant Attorney General, Tallahassee, for Appellee.

WINSOR, J.

In this appeal, we must determine what happens when a defendant alleges she discovered facts undermining her judge's impartiality only after the judge denied her postconviction motion. Although the rules of criminal procedure provide no direct answer, Florida Supreme Court precedent allows a defendant in this circumstance to file a successive rule 3.850 motion. We therefore reverse the order on appeal, and we remand so that the trial court can treat the motion to set aside as a rule 3.850 motion.

## I.

Michael Ufferman represented Appellant Dana Cannon in her postconviction proceeding, with Judge Frank Sheffield presiding. Ufferman simultaneously represented condemned inmate Paul Howell in his postconviction proceedings, with the same Frank Sheffield a central feature. Sheffield had years earlier been Howell's defense lawyer, and Howell (through Ufferman) claimed Sheffield mishandled the defense. As a result, Ufferman sought relief from Judge Sheffield in Cannon's case at the same time he argued in other cases that Judge Sheffield's faulty lawyering led to Paul Howell's death sentence.[1]

Cannon feared that Judge Sheffield might harbor animosity towards Ufferman, so she sought a different judge. But Judge Sheffield kept the case, and this court denied Cannon's subsequent prohibition petition. *Cannon v. State*, 113 So.3d 1 (Fla. 1st DCA 2013) (unpublished table decision). Cannon's postconviction proceeding went ahead, there was a final evidentiary hearing, and Judge Sheffield denied Cannon's claims in their entirety. This court affirmed. *Cannon v. State*, 166 So.3d 768 (Fla. 1st DCA 2015) (unpublished table decision). At the time, it would have seemed that was the end of that.

But after all of this, new facts gave rise to new claims, which in turn gave rise to this appeal. Months after this court affirmed the order denying postconviction relief, Judge Sheffield made an on-record comment that Cannon claims shows she was right all along about his animosity towards her attorney. In an otherwise unremarkable hearing in an unrelated criminal case, a lawyer told Judge Sheffield she needed to confer with her client's appellate counsel, whom she identified as Michael Ufferman. Judge Sheffield immediately responded on the record: "Well, don't argue to me about Mr. Ufferman. That's not going to help you out. That's only going to hurt your case."

Armed with this new development, Cannon promptly filed a motion to set aside Judge Sheffield's earlier order denying postconviction relief. Cannon asserted that Ufferman "has had no interaction with Judge Sheffield outside of any courtroom

---

1. This was not a new defense. For decades, Howell had challenged the adequacy of Sheffield's representation. *See, e.g., Howell v. State*, 707 So.2d 674 (Fla. 1998); *Howell v. State*, 877 So.2d 697 (Fla. 2004); *Howell v. Crews*, No. 4:04–CV–299/MCR, 2013 WL 672583 (N.D. Fla. Feb. 23, 2013); *Howell v. Sec'y, Fla. Dep't of Corr.*, 730 F.3d 1257 (11th Cir. 2013). Among other things, Howell had claimed Sheffield had a conflict of interest because of threats to Sheffield's wife. *See, e.g., Howell*, 707 So.2d at 677–79. Nonetheless, with an execution date pending, Ufferman's renewed criticism of Sheffield was widely publicized. *See, e.g., Florida Justices Deny Execution Appeal for Trooper's Killer*, Tampa Bay Online, Feb. 19, 2013, http://www.tbo.com/news/crime//Florida-justices-deny-execution-appeal-fortroopers-killer–B82454924Z.1 ("Ufferman said Frank Sheffield, now a state circuit judge in Tallahassee, had a conflict ....."); *Fla. Man Set for Execution Loses Another Appeal*, Tampa Bay Online, Feb. 22, 2013, http://www.tbo.com/Fla-manset-for-execution-loses-another-appeal-B82456269Z.1 ("Michael Ufferman ... contended Sheffield failed to find and present evidence against a death sentence.").

proceeding" and that the judge's comment showed he held personal animus towards him. Accordingly, Cannon argued, she should have a new hearing with a new judge.

In a detailed, written order, Judge Sheffield denied the motion to set aside. The order described the earlier disqualification motion, saying "Mr. Ufferman was arguing that [Judge Sheffield] was incompetent and ineffective in his representation of Mr. Howell and had in effect perpetrated a fraud on the Court." It further described the original disqualification motion as alleging animus based on Ufferman's "unsupported allegations on behalf of Mr. Howell." The order then defended not only the judge's earlier decision to deny disqualification but also Sheffield's conduct as a lawyer representing Howell: "It should be noted that all of the allegations raised in Howell were tried throughout the appellate Court systems, including the United States Supreme Court, and were found without merit." As a result, the order continued, "Howell was ultimately executed."

The order made no effort to justify the comment. It did not suggest that the judge made the comment in jest, nor did it present any other benign explanation. In fact, it did not even acknowledge that the judge actually uttered those words, repeatedly referring to the videotaped and transcribed statements as "allegedly made by the Court" or "alleged comments."[2] Instead, the order said the motion was untimely and that Cannon's "strained interpretation" of the words "form no reasonable basis for the assertion that the Court was tainted by this alleged animus" in denying postconviction relief. Moreover, the order said there was "no proof offered of any nexus asserted between" the "alleged comments" and the postconviction ruling. Finally, the order said the "Court categorically denies that any conflict exists or existed between the Court and counsel that in any way tainted ruling on [Cannon's] Motion."

## II.

The procedural posture we face is unusual. Cannon's motion to set aside cited no rule under which it was filed, and the rules of criminal procedure provide no obvious answer to whether a motion to set aside was the right procedural choice. But the Florida Supreme Court's decision in *Steinhorst v. State*, which neither party cited, guides and binds us. 636 So.2d 498 (Fla. 1994).

The material sequence in *Steinhorst* was the same as here: a defendant lost a rule 3.850 proceeding, lost on appeal, and only later discovered facts related to the judge's potential disqualification. *Id.* at 500. Walter Steinhorst had been convicted of multiple 1977 murders. *Id.* at 501. (McDonald, J., dissenting). After those murders—sometime in 1977 or 1978—lawyer Fred Turner represented the estate of one of the murder victims. *See id.* Not long after, lawyer Fred Turner became Judge Fred Turner and, "recogniz[ing] the potential for serious conflict," recused himself from the trial of Steinhorst's codefendant. *See id.* at 500. Nevertheless, the judge heard Steinhorst's rule 3.850 matter without disclosing the potential conflict, "even though the reasons for recusal applied equally" to Steinhorst's case and his codefendant's. *Id.* Unaware of the conflict, the Florida Supreme Court affirmed. *See id.* (referring to conflict as "a fact previously not disclosed to us").

After the facts came to light, Steinhorst filed a Florida Rule of Civil Procedure 1.540 motion to set aside the rule 3.850 order. *Id.* at 500. The trial court denied the motion, but the Florida Supreme Court reversed. *Id.* at 500–01. It

2. A video of the hearing, including the statement at issue, is in the record of this case.

held that, although rule 1.540 was not applicable, the trial court "should have treated [the 1.540 motion] as a 3.850 motion, which would not be barred as untimely or successive if 'facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence.'" *Id.* at 500 (quoting Fla. R. Crim. P. 3.850(b)(1)); *see also id.* (citing Art. V, § 2(a), Fla. Const. ("no cause shall be dismissed because an improper remedy has been sought")). The court remanded for the trial court to determine if Steinhorst had waived the conflict by not promptly raising it and, if he had not, to vacate Judge Turner's 3.850 judgment and conduct a new 3.850 proceeding.[3] *Id.* at 500–01.

■ Based on *Steinhorst*, the court below should have treated Cannon's motion to set aside as a 3.850 motion. *Id.* at 500. Cannon's motion was timely, whether measured by rule 3.850's two-year deadline, *see* Fla. R. Crim. P. 3.850(b)(1) (providing that a successive rule 3.850 motion is timely if filed "within 2 years of the time the new facts were or could have been discovered with the exercise of due diligence"), by the statutory provision to which Florida Supreme Court looked in

*Steinhorst, see* § 38.02, Florida Statutes (2015) (providing a thirty-day deadline for certain disqualification motions), or by the Florida Rule of Judicial Administration on which the trial court relied, *see* Fla. R. Jud. Admin. 2.330(e) (providing that a motion to disqualify must be filed within "10 days after discovery of the facts constituting the grounds for the motion").[4] Cannon's motion was also facially sufficient. Cannon alleged that the trial judge was biased against her attorney during her proceeding, and she supported that allegation with a specific comment the trial judge made about her attorney. Under the unique facts of this case, that is enough.

### III.

■ Because Cannon's motion was both timely and facially sufficient, the trial court could summarily deny the motion only if the claims it raised were conclusively refuted by the record. *See Kimbrough v. State*, 886 So.2d 965, 981 (Fla. 2004). The record before us does not conclusively refute Cannon's claim that Judge Sheffield harbored animus towards Mr. Ufferman that prejudiced her case. This does not mean that Cannon will ultimately succeed on that point. The State argues, for example, that Judge Sheffield was perhaps kidding.[5] Perhaps, but the record does not

---

3. The fractured *Steinhorst* decision has a peculiar presentation. The lead opinion is styled "per curiam" but was joined by only Justices Shaw and Harding, with Justice Barkett concurring specially without opinion. Justice Kogan authored a specially concurring opinion, which Justice Barkett also joined. The three remaining justices dissented. The specially concurring opinion agreed with the lead opinion "as far as it goes" but would have gone farther and granted a new rule 3.850 regardless of the timing of the disclosure. *Id.* at 501 (Kogan, J., concurring specially). Despite disagreement on other points, four justices agreed that the trial court should have treated the motion to set aside as a rule 3.850 motion. With a fragmented decision like this one, we are bound by the narrowest grounds on which

a majority of the justices agreed. *See State v. Horwitz*, 191 So.3d 429, 440 n.4 (Fla. 2016) (citing *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)).

4. Judge Sheffield denied the motion in part based on timeliness under rule 2.330. Because the motion sought to vacate a final order—not to disqualify a judge in an existing proceeding—we doubt rule 2.330 would apply at all. We need not decide that, though, because Cannon filed her motion within ten days of her attorney's receiving the November 6 hearing video.

5. The State correctly notes that shortly after saying that "argu[ing] to me about Mr. Ufferman .... [is] only going to hurt your case," Judge Sheffield made a joke about Clemson

conclusively show that. At any rate, it is up to the trial court to consider that and other issues in the first instance. In the meantime, we reverse the order on appeal. On remand, another judge should treat the motion as a 3.850 motion and proceed accordingly.[6]

REVERSED AND REMANDED.

OSTERHAUS and JAY, JJ., CONCUR.

---

football players. But that does not conclusively demonstrate that the earlier Ufferman comment was not serious.

6. Judge Sheffield retired sometime after issuing the order on appeal.