[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-11040

————————————————

RICHARD L SEALEY,

Petitioner-Appellant,

*versus*

WARDEN, GEORGIA DIAGNOSTIC PRISON,

Respondent-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:14-cv-00285-MLB

————————————————

Before JORDAN, JILL PRYOR, and NEWSOM, Circuit Judges.

PER CURIAM:

Condemned Georgia inmate Richard Sealey moved the district court to reopen his federal habeas proceedings following our decision in *Nance v. Comm'r, Ga. Dep't of Corr.*, 981 F.3d 1201 (11th Cir. 2020), in which we held that certain execution-related claims should be pursued in habeas corpus proceedings rather than in civil suits brought under 42 U.S.C. § 1983. The district court denied his motion, and, not long thereafter, the Supreme Court reversed our decision in *Nance*. *See Nance v. Ward*, 142 S. Ct. 2214 (2022). We **AFFIRM** the district court's denial.

## I

A Georgia jury convicted Sealey of malice murder on the ground that he tortured a woman with a hot fireplace poker and then killed her and her husband with an axe. *Sealey v. Warden, Ga. Diagnostic Prison*, 954 F.3d 1338, 1344–45 (11th Cir. 2020). After Sealey unsuccessfully pursued appellate and state post-conviction remedies, he filed a federal habeas corpus petition. *Id*. at 1349–53. The district court denied his petition and, in 2020, we affirmed that denial. *Id*. at 1344–45. As relevant here, the district court concluded in the course of that litigation that Sealey's challenges to his execution by lethal injection were not cognizable in habeas and that if he intended to pursue them, he would have to do so through a suit filed under 42 U.S.C. § 1983. Doc. 66 at 100–01. In particular, the court stated that it understood Sealey's petition to challenge the constitutionality of Georgia's specific "lethal injection procedures," an allegation that it held belonged in § 1983 under our then-

governing precedent. *Id.* (citing *Tompkins v. Secretary, Dep't of Corr.*, 577 F.3d 1257, 1261 (11th Cir. 2009)) ("A § 1983 lawsuit, not a habeas proceeding, is the proper way to challenge lethal injection procedures."). We didn't review that aspect of the district court's decision because the certificate of appealability didn't cover it.

In 2021, Sealey moved the district court to reopen his federal habeas proceedings on the ground, he said, that new circuit precedent—in particular, our then-recent decision in *Nance*, 981 F.3d 1201—rendered his lethal-injection claim cognizable in habeas. The condemned inmate in *Nance* had argued that his unique medical condition would make his execution by lethal injection cruel and unusual, and he proposed the firing squad as an alternative means of carrying out his death sentence. *Nance*, 981 F.3d at 1203. The complication, we observed in our decision, was that lethal injection was the only method of execution authorized by Georgia law. *Id.* at 1210. We held that because Nance's challenge, if successful, would deprive Georgia of the ability to execute him under existing law, it "necessarily impl[ied] the invalidity of his death sentence" and thus belonged in habeas. *Id.* at 1210–11 (citing, *e.g.*, *Heck v. Humphrey*, 512 U.S. 477 (1994)).

The district court denied Sealey's motion to reopen. It concluded that our decision in *Nance* didn't move Sealey's claim from the § 1983 to the habeas bucket because he "did not raise a method-of-execution challenge that, if successful, would prevent his execution by lethal injection in any form." Doc. 92 at 4.

Not long after the district court denied Sealey's motion, the Supreme Court reversed our decision in *Nance*. *See* 142 S. Ct. 2214. In so doing, the Court held that even if Nance's proposed alternative method of execution "necessitate[d] a change in state law," his claim nonetheless sounded in § 1983 because his "requested relief still places his execution in Georgia's control"—the state, the Court held, could simply change its law. *Id*. at 2223. Nance's challenge therefore did *not* "necessarily imply the invalidity" of his sentence. *Id*. at 2222 (quoting *Heck*, 512 U.S. at 487).

Sealey then moved the district court to set aside its order in light of the Supreme Court's decision in *Nance* and to reopen his habeas proceedings or, in the alternative, to amend its certificate of appealability to include the question whether his execution-related claim was cognizable in habeas.[1] The district court denied the motion to set aside its order but issued a new COA that included Sealey's cognizability argument.

## II

At the outset, we hold that Sealey's "motion to reopen"—which he predicated on a contention that the underlying law governing the cognizability of certain execution-related claims in habeas had changed—is properly understood as a Rule 60(b) motion to set aside the district court's earlier judgment. *See* Fed. R. Civ. P. 60(b) (providing circumstances in which a court "may relieve a party or its legal representative from a final judgment, order, or

---

[1] The district court had already issued a COA on other arguments.

proceeding").[2] That tees up a second issue: Was Sealey's motion a an unauthorized—and thus forbidden—"second or successive" habeas corpus petition?[3]

Under the Supreme Court's decision in *Gonzalez v. Crosby*, a Rule 60(b) motion is tantamount to a successive habeas petition only if, as relevant here, it attacks a previous court's resolution of a claim "*on the merits*." 545 U.S. 524, 532 (2005) (emphasis in original). Accordingly, the question for us is whether, in concluding that the type of execution-related claim that Sealey seeks to pursue is not "cognizable" in habeas—but rather only under 42 U.S.C. § 1983—the district court adjudicated that claim "on the merits." We conclude that it did not.

The *Gonzalez* Court recognized that "[t]he term 'on the merits' has multiple usages," but it clarified that in the habeas context

---

[2] Sealey contends that his motion is not a Rule 60(b) motion but, rather, is merely a "continuation" of his "first [habeas] application." Reply Br. of Appellant at 3 n.3. But the cases he cites for support apply only in limited circumstances that don't exist here. *See, e.g.*, *Martinez-Villareal v. Stewart*, 523 U.S. 637, 642 (1998) (allowing a petitioner who raised an unripe claim under *Ford v. Wainwright*, 477 U.S. 399 (1986), in his first federal habeas petition to bring the claim after ripening without seeking leave to file a second habeas petition); *Panetti v. Quarterman*, 551 U.S. 930, 947 (2007) (extending *Martinez-Villareal* to *Ford* claims that weren't initially raised in the first petition); *Slack v. McDaniel*, 529 U.S. 473, 485–87 (2000) (allowing a habeas petitioner to bring claims that were dismissed for failure to exhaust state remedies without seeking leave to file a second petition provided that he had exhausted the claims in the interim).

[3] We review *de novo* whether a petition for a writ of habeas corpus is second or successive. *Osbourne v. Secretary, Fla. Dep't of Corr.*, 968 F.3d 1261, 1264 (11th Cir. 2020).

the controlling question is whether the district court's original judgment constituted "a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. § 2254(a) and (d)." *Id.* at 532 n.4. "When," the Court continued, "a movant asserts one of those grounds (or asserts that a previous ruling regarding one of those grounds was in error) he is making a habeas corpus claim." *Id.* The "grounds" specified in § 2254(a) and (d), in turn, pertain to the substance of the underlying law that governs the propriety of the inmate's conviction or sentence—that is, whether either "violat[es] the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), or rests on a state-court decision that "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(1)–(2). *See also Gonzalez*, 545 U.S. at 533 (observing that a Rule 60(b) needn't be "treated like a habeas corpus application" if "neither the motion itself nor the federal judgment from which it seeks relief addresses federal grounds for setting aside the movant's state conviction"); *id.* at 538 (holding that a Rule 60(b) petition "is not to be treated as a successive habeas petition if it does not assert, or reassert, claims of error in the movant's state conviction").

The district court's conclusion here that the *type of claim* that Sealey seeks to litigate isn't "cognizable" in habeas, but must instead be pursued under § 1983, is different from a determination that Sealey's *particular claim* fails "on the merits," as that phrase is

used in this context. *Cf. also Amodeo v. FCC Coleman-Low Warden*, 984 F.3d 992, 1002–03 (11th Cir. 2021) (distinguishing between a claim's "merit" and "cognizability"); Restatement (First) of Judgments § 49 cmt. a ("[W]here there is a judgment for the defendant on the ground that the plaintiff sued in the wrong form of action, the judgment is not on the merits.").[4]

In sum, we hold that Sealey's 60(b) motion was not a successive habeas petition because it didn't attack a prior judgment "on the merits." We needn't opine on "cognizability" holdings generally; all that matters in the particular circumstances of this case is that the district court's determination that Sealey's claim wasn't

---

[4] The state's own "analogy" confirms as much: "[S]uppose," the state says, "that a petitioner asserts a habeas claim of ineffective assistance of counsel, but nowhere even so much as alleges that his counsel's deficiency prejudices him. When the district court denies that claim, it is 'on the merits' because the petitioner simply failed to assert a viable habeas claim—there would 'not exist grounds entitling a petitioner to habeas corpus relief.'" Br. of Appellee at 22–23 (quoting *Gonzalez*, 545 U.S. at 532 n.4). True, but that is not, as the state says, "identical to what happened here." *Id*. at 23. In the state's hypo, the petitioner's challenge warranted dismissal because he failed to allege a necessary element of his underlying Sixth Amendment claim—namely, that his lawyer's deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court's dismissal of that claim would thus absolutely be "on the merits." But again, the situation here is different: The district court didn't address the substance or particulars of Sealey's underlying Eighth Amendment claim—its elements, their application to Sealey's case, etc. Rather, it determined, as an antecedent matter, that Sealey wasn't entitled to pursue his claim in habeas at all, whatever its merits.

cognizable in habeas wasn't a judgment "on the merits" in the way that *Gonzalez* used that phrase.

### III

We review a district court's denial of a Rule 60(b) motion for abuse of discretion. *Howell v. Secretary, Fla. Dep't of Corr.*, 730 F.3d 1257, 1260 (11th Cir. 2013). We hold that the district court did not err—let alone abuse its discretion—in holding that Sealey's particular claim sounds in § 1983 rather than in habeas.

Without definitively determining the precise scope of the Supreme Court's decision in *Nance*, it's fair to say that it leaves habeas a fairly circumscribed role in execution-related challenges. To be sure, an inmate claiming that, for whatever reason, the state may not constitutionally execute him at all—say, because capital punishment is per se unconstitutional, because there is no known valid method of execution (which perhaps amounts to the same thing), or because he is categorically ineligible for the death penalty—may, and perhaps must, proceed in habeas. And we can even assume, for the sake of argument, that a frontal challenge to a particular method of execution—for instance, that lethal injection in any form is unconstitutional—may proceed in habeas.

But—and this is dispositive—fairly read, that's *not* the sort of challenge that Sealey has alleged. He certainly hasn't claimed that the state may not execute him by any means. Nor, we think, has he contended that lethal injection itself is unconstitutional. Rather, his petition and supporting brief are, as the district court

concluded, most reasonably understood to challenge only Georgia's particular lethal-injection protocols and procedures.

In his habeas petition, for instance, Sealey argued that "Georgia's *protocols and procedures* for executing prisoners by lethal injection are inconsistent with the evolving standards of decency . . . ." Doc. 1 at 137 (emphasis added); *see also id*. at 138 ("protocols and procedures"); 14o ("protocols and procedures"); 141 ("protocols and procedures"). In particular, Sealey challenged "the legality of the method [by which Georgia] obtain[ed] lethal injections drugs," *id*. at 138, alleged that the state had "illegally imported" and "illegally obtained" its lethal-injection drugs, *id*. at 138–39, complained that the state had "abruptly altered its lethal injection procedures," *id*. at 138, charged that the state wasn't using "FDA-approved" drugs in executions, *id*. at 139, asserted that the state had resorted to using a "compounding pharmacy" to manufacture its lethal-injection drugs, *id*., and complained that the state had made "the nature and origin of [its] lethal injection drugs a 'confidential state secret,'" *id*. at 139 (quoting O.C.G.A. § 42-5-36(d)).

Sealey's brief in support of his habeas petition sounded the same "protocols and procedures" themes. *E.g.*, Doc. 47 at 242. For instance, he assailed Georgia's "adoption of a protocol that relies upon drugs of unknown origin, and its decision to cloak both the source of its drugs and the qualifications of the personnel charged with carrying out executions . . . ." *Id*. at 240–41. Echoing his petition, he likewise complained that the state had "no FDA-approved supply" of lethal-injection drugs, *id*. at 241, that it was using a

"compounding pharmacy" to make them, *id*. at 242, that the drugs were "anonymously-produced," *id*., that it hadn't "establish[ed] minimum qualifications required of the personnel performing" execution procedures, *id*., and that it had classified the origins of the drugs and the qualifications of state personnel a "confidential state secret," *id*. *See also generally id*. at 251 ("Compounded Pentobarbital Presents a Risk of Harm"); *id*. at 253 ("Unqualified Personnel Present a Risk of Harm"); *id*. at 258 ("Georgia Is Carrying Out Executions with Illegally-Obtained Drugs"); *id*. ("Pentobarbital Can Only Be Compounded Pursuant to a Valid Prescription"); *id*. at 264 ("Georgia Obtained Its Lethal Injection Drugs Through a Fraudulent Prescription"); *id*. at 271 ("Georgia's Combination of Secrecy, Ineptitude and Illegality in Its Administration of Executions by Lethal Injection Violates Petitioners['] Constitutional Rights").

In the face of all that, Sealey points principally to his petition's prayer for relief: "Petitioner prays that this Court . . . [i]ssue a writ of habeas corpus to have Petitioner brought before it so that he may be . . . relieved of his unconstitutional sentence of death." Doc. 1 at 143. That, we think, is simply too thin a reed. That single sentence cannot fairly be divorced from the larger context of the petition and supporting brief, both of which, as the district court correctly concluded, focus on the more granular aspects of Georgia's particular (and current) lethal-injection protocol.[5]

---

[5] The same is true of the bolded subheading in Sealey's petition, which states that "PETITIONER CANNOT BE SUBJECTED TO LETHAL INJECTION BECAUSE TO DO SO WOULD BE CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF PETITIONER'S RIGHTS UNDER THE

In sum, we hold that the district court did not err in concluding that Sealey's particular challenges to Georgia's lethal-injection "protocols and procedures" sound in § 1983—and are not cognizable in habeas—because they do not challenge the validity of his conviction or sentence.

## IV

For the forgoing reasons, the district court's denial of Sealey's motion to reopen is **AFFIRMED**.

---

FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS." Doc. 1 at 137. The substance of Sealey's argument belies the heading's categorical framing.